(Decided July 17th 1866.)

---

## SAMUEL S. COSTON vs. LEAH COSTON.

APPEAL AND WRIT OF ERROR,—WILL NOT LIE IN MARYLAND IN CASES OF HABEAS CORPUS.—A writ of error may be brought in both criminal and civil cases, and has no peculiar power which gives it a wider range or greater effect than an appeal in the latter.

That an *appeal* will not lie from an order of an inferior Court, upon a petition for a *habeas corpus*, on the ground that the decision is not a *final judgment*, has been settled by the decisions in *Bell vs. The State*, 4 *Gill*, 304, and *Coston vs. Coston*, 23 *Md. Rep.*, 271; and the force of these decisions is in no degree impaired where the attempt is to review the order of the inferior Court by *writ of error.*

WRIT OF ERROR to the Criminal Court of Baltimore city.

Leah Coston, on behalf of Simon and Washington Coston, as mother and next friend, petitioned the Criminal Court of Baltimore city for the writ of *habeas corpus* to be directed to Samuel Coston, commanding him to produce before said Court the bodies of Simon and Washington Coston, alleging that they had been "illegally arrested," and were then "held in custody" by him. The writ was issued on the 6th of May, 1865, and made returnable on the 17th of the same month, and was returned served on the 9th. Cos-

ton appeared in Court on the 17th with said Simon and Washington, and returned that he held them as apprentices, and filed as part of said return copies of the indentures by which he held them.

To this return the following pleas, in substance, were filed on behalf of the petitioner:

1st. That the parents of said children were not summoned to be present at the binding.

2nd. That the said children, at the time of said binding, were not the children of free negroes, but were born in slavery, and that both they and their mother were the slaves of the defendant until set free by the Constitution of 1864, and that the detention of said children under the color of apprenticeship, as returned, was a detention in slavery or involuntary servitude contrary to said Constitution.

3rd. That at said binding, the parents were able to support said infants and keep them employed so as to teach them habits of industry, and were still so willing and able.

The counsel for the appellant then filed the following exceptions to the above pleas:

1st. Because the matters of said proposed traverses are not matters of fact set forth in said returns.

2nd. Because the said several matters are immaterial and irrelevant to the sufficiency of the return.

3rd. That the said proposed traverses relate to matters of fact not properly triable upon these writs, and proper if material for the Orphans' Court of Somerset county.

They therefore prayed the Court that they be not received, which prayer the Court overruled; whereupon a demurrer was filed by them and issue joined thereon. The demurrer having been overruled, the Court decided that the said pleas were sufficient to bar the respondent from the detention of the children, and passed an order discharging them from his custody, and delivered them to their parent named in the

petition. From this decision a writ of error was sued out through the Circuit Court of Baltimore city, and brought to this Court.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough, Cochran, and Weisel, J.

*William S. Waters* and *William Schley*, for the plaintiff in error:

A writ of error will be allowed in Maryland in every case where it would be allowed at common law, whether an appeal would lie or not. *Code, Art.* 5, *sec.* 4. *Evans' Pr.*, 424, 428. 3 *Bac. Abr.*, 325, (*note*) 330. *Bouvier's Inst.*, 69, 537, 545. 2 *Williams' Saunders*, 100, 101, *note* 1. Will the writ of error lie in this case?

1st. This is a final judgment. It will be conceded, that no writ of error will lie unless the judgment is final. "A writ of error lieth when a man is grieved by an error in the foundation proceeding, judgment or execution in a suit, but without a judgment, or an award in the nature of a judgment, no writ of error does lie." *Coke Lit.*, 288, *b.* *Boyle vs. Zackarie, et al.*, 6 *Peters*, 655, 656.

The question as to what is a final judgment has been much considered. The only requisite to finality in a judgment is, that it should dispose of the whole subject matter in controversy. 9 *Petersdorff Abr.*, 3 (*note.*) *Holmes vs. Jennison*, 14 *Peters*, 562, 563. *Metcalfe's case*, 11 *Coke*, 38, 40.

No Court could, by its judgment, have disposed more completely of an entire matter in controversy than has been done in this cause. Independent of the question of a want of jurisdiction, which will be considered hereafter, the judgment is, in form and substance, a final judgment.

2nd. This judgment is given in a suit or action. "A suit is any proceeding in a Court of Justice by which an individual pursues that remedy in a Court of Justice which the law

affords him." *Holmes vs. Jennison,* 14 *Peters,* 566. A writ of *habeas corpus* has been decided to be a suit. See case last cited, and *Yates vs. The People,* 6 *Johns.,* 337. *Ableman vs. Booth,* 21 *How.,* 506.

3rd. The judgment here is upon proceedings in conformity with the common law. In the case of *The City of London,* 8 *Co.,* 127, it is said, that a writ of error would not lie because there could be no demurrer or issue joined.

Art. 43, sec. 13, of the Code, authorises pleadings, and in this cause the whole question is decided upon demurrer. The pleadings are by the common law, and a regular judgment entered thereupon. The great difficulty in England, where the question of the right to the writ of error in case of *habeas corpus* has been considered, is that there was no regular form of judgment entered. Nothing was done but to endorse the *remittitur* upon the back of the writ. Lord HOLT, in order to obviate this objection in the case of the *Aylesbury men,* ordered the judgment to be entered in form. 8 *Hargrave's State Trials,* 167. *Queen vs. Patty,* 2 *Ld. Raym.,* 1115. 2 *Salk.,* 304.

4th. The decision in this case is not in the exercise of a discretion, as it is a judgment upon a matter of right. 2 *Ld. Raym.,* 1115. 2 *Salk.,* 304. *Harg. St. Tr.,* 167. *Dean & Ch. of Dublin,* 1 *Strange,* 536. 8 *Mod.,* 27. 2 *Bro. Par. Ca.,* 554. 6 *Johns.,* 338. 14 *Peters,* 561. 21 *How.,* 506.

The possibility of a review, by this Court, of proceedings under writs of *habeas corpus,* is considered in the case of *Ex parte O'Neil,* 8 *Md. Rep.,* 229.

*William Daniel, A Stirling, Jr.,* and *Henry Stockbridge,* for the defendant in error:

I. Of the writ of error:

1. A writ of error will not lie at common law upon a *habeas corpus. City of London,* 8 *Coke,* 253. *King vs. Dean &*

*Ch., &c.,* 8 *Mod.,* 27. *Queen vs. Patty,* 2 *Ld. Raym.,* 1116. 1 *Strange,* 543. 2 *Bro. Par. Ca.,* 554. 1 *P. Wms.,* 349. 2 *Salk.,* 503. 14 *East.,* 32, ( *note.*) 8 *Harg. St. Tr.,* 90. 14 *Howell St. Tr.,* 806. *Yates vs. People,* 6 *Johns.,* 410 *to* 430. *Holmes vs. Jennison,* 6 *Peters,* 627 *to* 630. *Com. Dig., Titles,* "*Pleader—Error,*" 3 *B.,* 7.

2. The writ will not lie where the proceeding does not conform to common law proceedings. *Groenvelt vs. Burrell,* 1 *Salk.,* 144 & 263. 1 *Ld. Raym.,* 469. *Savage Manf. Co. vs. Owings,* 3 *Gill,* 499.

3. The writ will not lie where the decision rests in the discretion of the Court. *Marine Ins. Co. of Alexandria vs. Hodgson,* 14 *Peters,* 626. 6 *Cranch,* 206. *Armstrong vs. Wright,* 1 *Ruff. & Hawk.,* 93. *Bard vs. Lansdale,* 2 *Binn.,* 80.

4. The writ lies only from a final judgment. *Co. Lit.,* 288, 127, *a. & 128, b.* 11 *Coke,* 38. 14 *Peters,* 626.

5th. The decision upon *habeas corpus* is not final or conclusive. *Ex parte Burford,* 3 *Cranch,* 447. *Ex parte Bollman & Ex parte Swartwout,* 4 *Cranch,* 101, &c. *Bell vs. State,* 4 *Gill,* 304.

6. *Appeal* will not lie upon *habeas corpus. Coston vs. Coston,* 23 *Md. Rep.,* 271.

7. Where an appeal or writ of error lies, the judgment is binding until reversed. *Ex parte Watkins,* 3 *Peters,* 193. 4 *Gill,* 304. A judgment on *habeas corpus* is not thus binding. 4 *Gill,* 304. *Ex parte Partington,* 13 *M. & W.,* 678.

Bowie, C. J., delivered the opinion of this Court.

A writ of error may be brought in criminal as well as civil causes. It has no peculiar power which gives it a wider range or greater effect than an appeal in the latter. They are but different modes of accomplishing the same thing. The review of judgments of Courts of original and inferior jurisdiction, by a Court of appellate jurisdiction. The one is by a writ

originally issued out of chancery, but now from the Courts having chancery jurisdiction directed to the Courts whose alleged error is proposed to be reviewed; the other by prayer for an appeal, entered within the time and in the manner prescribed by law, and it may be safely said that in this State, in all civil cases, an appeal and writ of error lie "*in consimili casu.*" A suit and final judgment is as necessary in one case as the other.

In the case of the *Matter of the Petition of Samuel J. Coston*, decided by this Court at the April term, 1865, (reported in 23 *Md. Rep.*, 271,) it was held, that the order of a judge or Court, upon a petition for a *habeas corpus*, could not be a subject of appeal, because it was not, in legal acceptation, "a judgment or determination of any Court of Law, in any *civil suit or action*," from which alone appeals would lie. This decision was founded on a similar ruling in the case of *Bell vs. The State*, 4 *Gill*, 304, in which this Court declared that the writ of *habeas corpus* was a proceeding *summary in its character*, addressed to the *discretion* of the judge or tribunal to whom the application was made, so far as the discharge of the party is concerned; a proceeding where, in many cases, the evidence upon which the judgment is founded, cannot be presented to the appellate Court, and *is not final and conclusive.*"

That decision condensed the reasoning of the adjudged cases in England for a century past, and was several years subsequent to the case of *Holmes & Jennison*, 14 *Peters*, relied on by the appellants, and must be assumed to have been settled law, since the Court did not deem it necessary to refer to authorities to sustain their conclusion. The force of that decision is not impaired in any degree by the new mode of bringing up the question, as it was not founded on matter of form, but matters of substance. If it were not superfluous to add another to the arguments already urged, it might be said, the main object of the writ of "*habeas corpus ad subji-*

64      v. 25.

*ciendum*," as a writ of right, which is to release immediately from unlawful personal restraint, is counteracted by converting it into a suit, subject to all the delays and expenses incident thereto.

Although the petitioner should be released by the order of the judge or Court to whom he made application, if that order is subject to revision and reversal by an appellate Court, the final judgment, to be of any avail, must deprive the petitioner of the right of petitioning again; whereas, the right of petitioning for a *habeas corpus*, is unlimited in its nature, and the application may be renewed *toties quoties*, as long as the petitioner is confined, and a judge or Court can be found to whom he may address his prayer for relief.

It is conceded by the appellant's counsel that no writ of error will lie unless the judgment is final. This Court has said in the case of *Bell vs. The State*, the judgment in *habeas corpus* is not final. All the English authorities, from *Coke* to *Holt*, were reviewed by Chief Justice KENT in the case of *Yates vs. The People*, 6 *Johns. Rep.*, the result of which he sums up in the following energetic and eloquent apostrophe:

"I now submit to the candor and judgment of this Court, whether I have not sufficiently shown that, by the English law, a writ of error will not lie in this case. We have the unanimous opinion of the Court of C. B. in the time of Lord COKE. We have the resolutions of the House of Commons in the reign of Queen Ann. We have the opinion of the Court of K. B. in the time of George I., and lastly, we have the sanction of Lord Ch. B. COMYNS, and all this without a single case, or decision, or precedent, or opinion, to oppose such a stream of authority. What intelligent person can then doubt of the law? * * * * The doctrine was laid down in Lord COKE's day, as of course, as being then the known and established law. The principle is of immemorial standing. It has become the uncontroverted maxim of ages."

Although this opinion was not sanctioned by a majority

of the Senate of N. Y., they being divided as twelve to sixteen, yet, much the greater portion of the Bench concurred with Ch. Kent.

The case of *Holmes vs. Jennison*, 14 *Peters*, 540, was a writ of error brought on the order of the Supreme Court of Vermont, remanding on *habeas corpus* the plaintiff in error, who had been committed on the Governor's warrant, to be surrendered to the Canadian authorities as a fugitive from justice. The Supreme Court of the United States was divided on the question of jurisdiction, so that no decision was pronounced in the case. In announcing their opinions several of the judges expressed their views on the question, whether a writ of error would lie in such a case.

Taney, C. J., Story, McLean, Wayne and Catron, concurred in favor of a writ of error. Baldwin dissented, others were silent. The Chief Justice placed his opinion on the ground that there was a judgment of the highest Court of the State of Vermont, formally and fully entered on its records, declaring the prisoner was legally held under the authority of the State law, which was precisely one of the cases in which the writ of error is given in the 25th section of the Act of 1789. That "the validity of the Governor's warrant was the only question before the Supreme Court of Vermont, and that question was certainly finally settled.

The writ of error was granted at the instance of the prisoner, "*in favorem libertatis*," under what was considered the established construction of the Act of 1789, in parallel cases, such as petitions for *mandamus* and writs of prohibition, which were held to stand on the same principles, and were construed to be "suits" in the meaning of the Acts of Congress. No such analogy exists in our legislation.

Appeals in cases of *mandamus* being the subject of express and distinct provision, without the remotest allusion to the writ of *habeas corpus* in the provisions for appeal or writ of error.

In the case of *Ableman vs. Booth*, 21 *How.*, 506, the Supreme Court of Wisconsin discharged a prisoner, committed by a commissioner of the United States, for a violation of the Fugitive Slave Law. After rendering their judgment, before the writ of error was sued out, the State Court entered on its record, that in the final judgment it had rendered, the validity of the Act of Congress of September 18th, 1850, and February 12th, 1793, and the authority of the marshal to hold the defendant in his custody under the process mentioned in his return to the writ of "*habeas corpus*," were respectively drawn in question, and the decision of the Court in the final judgment was against their validity respectively. The whole proceedings show, there was an attempt upon the part of the State Courts to supersede and annul the authority of the United States, by declaring the law unconstitutional and arresting the action of its officers and Courts, under semblance of the right to issue a writ of "*habeas corpus*," and the United States had to assume jurisdiction to vindicate its authority.

It is not inappropriate to remark, that the decisions in the Supreme Court of the United States, above referred to, may be considered as turning upon the statutes of the United States providing for appeals or writs of error from the decisions of State Courts, in all cases in which the Constitution or laws of the United States made in pursuance thereof, are drawn in question, and the decision was against their validity.

If writs of error in such cases did not lie, the authority of the United States would depend entirely upon the judicial decisions of the judges of the State Courts.

Independently of this consideration, the authority of these cases cannot control the series of decisions to the contrary in the State Courts. After collating all the cases, Hurd, a late writer on *habeas corpus*, says: "The current of authority in the State Courts is, that a review of a decision on

*habeas corpus,* independently of statutory provisions, cannot be had by writ of error or appeal, and that, on the ground that the decision is not a final judgment; for which he cites, *Bell vs. The State,* 4 *Gill,* 304. *Russell vs. The Commonwealth,* 1 *Penrose & Watts,* 82. *Wade vs. Judge,* 5 *Ala.,* 18. *Howe vs. The State,* 9 *Miss.,* 690. 2 *Cal.,* 424.

This objection, constituting the appellee's first point, goes to the jurisdiction of this Court over the subject matter, and being in our judgment well taken, makes it unnecessary, as well as improper, to consider the other points raised by the briefs of the respective parties.

*Writ of error dismissed.*

