ADAMS *v.* MAY, SUPERINTENDENT

[No. 7, October Term, 1950.]

154

*Application for leave to appeal granted, April 11, 1950.*

*Decided October 11, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

No brief and no appearance for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom was *Hall Hammond, Attorney General,* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This case has been treated as an appeal from an order, passed after hearing on a petition of the Superintendent of Eastern Shore State Hospital under sections 22 and 34A█ of Article 59 of the Code, remanding appellant to the hospital "in accordance with the terms of her commitment."

On February 12, 1941 appellant was received as a patient at the hospital upon the written authority of the County Commissioners of Cecil County and the certificates, dated January 25, 1941, of two physicians, in accordance with the provisions of section 34 of Article 59, (Acts of 1886, ch. 487 and 1900, ch. 603). Section 22, Acts of 1920, ch. 682, was amended, and section 34A enacted, by Chapter 14 of the Acts of 1944, Special Session, amended by Chapter 387 of the Acts of 1945. On September 14, 1949 a written request for discharge

was made by appellant "as provided by section 34A". The superintendent, being of the opinion that appellant's mental condition required her further detention, did not comply with her request. On November 28, 1949 he filed a petition, alleging these facts and praying that she be brought before the court, in accordance with the provisions of section 22, as amended, for the purpose of having her sanity determined. On the same day an order was passed that she be produced before the court the next day. On November 29, 1949 she was produced and the order was passed remanding her to the hospital "in accordance with the terms of her commitment." A letter from appellant to Judge Henry, dated November 29, 1949, received and filed December 3, 1949, has been treated by Judge Henry and by us as an order for appeal to this court.

There was no appearance of counsel for appellant in the lower court or in this court and no brief or argument for her in this court. The record contains no transcript of proceedings below and from the appellee's brief it appears that there was no stenographer at the hearing. There were transmitted to this court the letter from appellant dated November 29, 1949 and a subsequent letter to Judge Henry. We have since received a letter from her. All three letters are in large part illegible or else unintelligible.

There is no express provision in section 22 or 34A or elsewhere for appeal from an order passed under either section. The Attorney General submits that, by analogy to *Ex parte Bristor's Estate*, 115 Md. 614, 81 A. 25, an appeal should lie. We have reached this conclusion.

Section 34 provides that no person shall be committed to or confined as a patient in any institution for the insane except upon the written certificates of two physicians. It makes no provision for legal proceedings or adjudication before or after commitment or confinement. The oldest method of adjudicating the question of insanity is by the writ *de lunatico inquirendo*,

which is within the general chancery powers relating to persons *non compotes mentis* under Art. 16, sec. 123 of the Code, Acts of 1785, ch. 72, sec. 6. Under Art. 5, sec. 30, (Acts of 1785, ch. 72, sec. 29), authorizing appeals from "any final decree, or order in the nature of a final decree", of a court of equity, an appeal will lie from an order confirming an inquisition, or refusing to rescind the decree of confirmation for alleged irregularity in the proceedings, or refusing to supersede the inquisition because of restoration to sanity. *Ex parte Bristor's Estate, supra,* 115 Md. 618, 81 A. 25. By Chapter 751 of the Acts of 1947, (amended Acts of 1947, Extra Session, ch. 71, Art. 16, Sec. 124A), the use of a sheriff's jury in proceedings on the writ is abolished and provision is made for determination of the question of sanity in a court of equity, by a jury empanelled as "in other civil cases."

Section 22 of Article 59, (as enacted in 1920), provided for application "to any of law courts" of Baltimore or "any of the Circuit Courts" of the state by or on behalf of any person confined in an institution because of insanity or mental disorder, and determination of the "question of sanity or insanity or mental disorder" by a jury. The language of the section was equally applicable to a person committed without previous adjudication or one who had previously been adjudged insane and claimed to have recovered. By the Acts of 1944 and 1945, section 34A was enacted, expressly authorizing "commitment" to institutions on the certificates of two physicians under section 34, and providing for "determination of sanity" in accordance with section 22, and section 22 was amended so as to permit determination either by the court or (if jury trial is prayed) by a jury, and specifying "the Circuit Court for any county or a Court of law in * * * Baltimore." From the context it may be inferred that either in the city or in a county the proceeding is in a court of law, but there is no practical or substantial difference (a) between such a proceeding before a jury in a court

of law and a proceeding before a jury in a court of equity on a writ *de lunatico inquirendo* under the Acts of 1947, Art. 16, sec. 124A, or (*b*) between such a proceeding, before the court and a proceeding in equity to supersede or quash an inquisition of insanity under a writ *de lunatico inquirendo*.

Jurisdiction under section 22 or 34A of Article 59 or section 124A of Article 16 may be called a "special" jurisdiction in the sense that it is regulated by statute and not only by the common law or English chancery practice, but it is not a "special and limited" jurisdiction in the sense that it is intended to be exclusive of appeal to this court. Procedure either at law or in equity has frequently been supplemented or amended by statute without thereby destroying the right of appeal to this court. Code, Article 16 and 75. Provision in section 34A for payment of "Court costs * * *, including the fees of the jury, court stenographer and bailiffs" by the county or city if "the alleged insane person" has no property or estate, is a recognition of the vital importance to the individual of a determination of sanity and contemplates a stenographic record which would at least make possible review on appeal. We think a "determination of sanity" under section 22 or 34A is a final "determination of any court of law in any civil suit" (Art. 5, sec. 2, Act of 1785, ch. 87, sec. 6), just as any similar determination in a court of equity is a "final decree, or order in the nature of a final decree." Art. 5, sec. 30, Act of 1785, ch. 72, sec. 29.

In *Bailey v. Superintendent of Spring Grove State Hospital*, 190 Md. 735, 60 A. 2d 188, we held that no appeal lies from refusal of a writ of habeas corpus to obtain a "sanity hearing", because the statute expressly denies a right of appeal in *habeas corpus* cases "unless the petitioner is detained for or confined as the result of a prosecution for a criminal offense." Code, Art. 42, sec. 3D. Long before, this court had repeatedly held that an order in a *habeas corpus* case is not a *final* determination for the reason (among others) that after

denial of relief the applicant "may present a similar application to any other Judge or Court of the State." *Bell v. State,* 4 Gill. 301, 304, 45 Am. Dec. 130; *Ex parte Coston,* 23 Md. 271, 273; *Coston v. Coston,* 25 Md. 500, 505-509; *State v. Boyle,* 25 Md. 509, 520-521; *City of Annapolis v. Howard,* 80 Md. 244, 245-246, 30 A. 910. In *Coston v. Coston* this view was regarded as supported by decisions in other states and in England to the effect that *habeas corpus* cases are not reviewable on writ of error or appeal. In *City of Annapolis v. Howard* [80 Md. 244, 30 A. 911] the previous decisions of this court were reaffirmed, "notwithstanding the supposed growth of a different doctrine in other states". In respect of appeals *habeas corpus* cases are thus *sui generis.*

The record in the instant case is not sufficient to enable us to reach any judicial conclusion on the merits. We think section 34A requires a stenographic transcript or some adequate substitute therefor. Appellate review is much older than court stenographers. In England judges' notes long did, and to a large extent still do, serve this purpose. The Attorney General informs us that in at least one county the court appoints counsel for the alleged insane person and has the testimony reported by a court stenographer. We think the statute at least authorizes this procedure. We have no reason to suspect that any injustice has been done in this case, but such cases involve a potential danger, however remote, of grave injustice. Manifestly we should not direct discharge of appellant. In the circumstances we will affirm the order without prejudice to a new proceeding under sections 34A and 22.

*Order affirmed, with costs, without prejudice.*