918 A.2d 453

**Gerald D. FULLER**

v.

**STATE of Maryland.**

**No. 62 Sept. Term, 2006.**

Court of Appeals of Maryland.

March 13, 2007.

Brian M. Saccenti, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), Baltimore, MD, for Petitioner.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Md., on brief), Baltimore, MD, for Respondent.

Argued before BELL, C.J., RAKER, WILNER,* CATHELL, BATTAGLIA, GREENE and THEODORE G. BLOOM (retired, specially assigned), JJ.

---

* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

BATTAGLIA, Judge.

The case *sub judice* presents this Court with the task of determining whether an order denying an inmate commitment to a drug treatment program pursuant to Section 8–507 of the Health–General Article [1] is appealable. Because we hold that

---

1. At the time Fuller filed his petition, Section 8–507 of the Health–General Article provided:

(a) *Applicability.*—This section applies only to a defendant for whom:
(1) No sentence of incarceration is currently in effect; and
(2) No detainer is currently lodged.
(b) *In general.*—Subject to the limitations in this section, a court that finds in a criminal case that a defendant has an alcohol or drug dependency may commit the defendant as a condition of release, after conviction, or at any other time the defendant voluntarily agrees to participate in treatment, to the Department for treatment that the Department recommends, even if:
(1) The defendant did not timely file a motion for reconsideration under Maryland Rule 4–345; or
(2) The defendant timely filed a motion for reconsideration under Maryland Rule 4–345 which was denied by the court.
(c) *Prerequisites.*—Before a court commits a defendant to the Department under this section, the court shall:
(1) Offer the defendant the opportunity to receive treatment;
(2) Obtain the written consent of the defendant:
(i) To receive treatment; and
(ii) To have information reported back to the court;
(3) Order an evaluation of the defendant under § 8–505 or § 8–506 of this subtitle;
(4) Consider the report on the defendant's evaluation; and
(5) Find that the treatment that the Department recommends to be appropriate and necessary.
(d) *Services.*—(1) The Department shall provide the services required by this section.
(2) A designee of the Department may carry out any of the Department's duties under this section if appropriate funding is provided.
(e) *Admission to facility.*—(1) A court may not order that the defendant be delivered for treatment until the Department gives the court notice that an appropriate treatment program is able to begin treatment of the defendant.
(2) The Department shall facilitate the prompt treatment of a defendant.
(f) *Supervision of defendant.*—For a defendant committed for treatment under this section, a court shall order supervision of the defendant:
(1) By an appropriate pretrial release agency, if the defendant is released pending trial;
(2) By the division of parole and probation under appropriate conditions in accordance with §§ 6–219 through 6–225 of the Criminal

Note 1—Continued

Procedure Article and Maryland Rule 4–345, if the defendant is released on probation; or

(3) By the Department, if the defendant remains in the custody of a local correctional facility.

(g) *Transportation.*—A court may order law enforcement officials, detention center staff, Department of Public Safety and Correctional Services staff, or sheriff's department staff within the appropriate local jurisdiction to transport a defendant to and from treatment under this section.

(h) *Withdrawal of consent.*—The Department shall promptly report to a court a defendant's withdrawal of consent to treatment and have the defendant returned to the court within 7 days for further proceedings.

(i) *Habeas corpus.*—A defendant who is committed for treatment under this section may question at any time the legality of the commitment by a petition for a writ of habeas corpus.

(j) *Duration; extension; termination.*—(1) A commitment under this section shall be for at least 72 hours and not more than 1 year.

(2) On good cause shown by the Department, the court, or the State, the court may extend the time period for providing the necessary treatment services in increments of 6 months.

(3) Except during the first 72 hours after admission of a defendant to a treatment program, the Department may terminate the treatment if the Department determines that:

(i) Continued treatment is not in the best interest of the defendant; or

(ii) The defendant is no longer amenable to treatment.

(k) *Release.*—When a defendant is to be released from treatment under this section, the Department shall notify the court that ordered the treatment.

(*l*)(1) *Leaving facility without authorization.*—(1) If a defendant leaves treatment without authorization, the responsibility of the Department is limited to the notification of the court that ordered the defendant's treatment as soon as it is reasonably possible.

(2) Notice under this subsection shall constitute probable cause for a court to issue a warrant for the arrest of a defendant.

(m) *Obligations of Administration.*—Nothing in this section imposes any obligation on the Department:

(1) To treat any defendant who knowingly and willfully declines to consent to further treatment; or

(2) In reporting to the court under this section, to include an assessment of a defendant's dangerousness to one's self, to another individual, or to the property of another individual by virtue of a drug or alcohol problem.

(n) *Credit against sentence.*—Time during which a defendant is held under this section for inpatient evaluation or inpatient or residential treatment shall be credited against any sentence imposed by the court that ordered the evaluation or treatment.

(o) *Authority of court to order treatment not limited.*—This section may not be construed to limit a court's authority to order drug treatment in lieu of incarceration under Title 5 of the Criminal Law Article.

it is not, we shall affirm the judgment of the Court of Special Appeals.

## I. Introduction

In 1978 and 1979, the Petitioner, Gerald Davis Fuller, was indicted for first-degree murder, first-degree rape, and robbery with a deadly weapon charges. On July 12, 1979, a jury found Fuller guilty of first-degree murder, and he was sentenced to imprisonment for the balance of his natural life, with credit for time served. Later that year, Fuller pled guilty to first-degree rape and robbery with a deadly weapon, and was

---

Note 1—Continued

Md. Code (1982, 2000 Repl. Vol., 2004 Supp.), § 8–507 of the Health–General Article.

In 2006, the General Assembly amended Section 8–507, and as currently enacted, it provides in pertinent part:

(a) *In general.*—Subject to the limitations in this section, a court that finds in a criminal case that a defendant has an alcohol or drug dependency may commit the defendant as a condition of release, after conviction, or at any other time the defendant voluntarily agrees to participate in treatment, to the Department for treatment that the Department recommends, even if:

(1) The defendant did not timely file a motion for reconsideration under Maryland Rule 4–345; or

(2) The defendant timely filed a motion for reconsideration under Maryland Rule 4–345 which was denied by the court.

* * *

(c) *Reports of defendant's records.*—Immediately on receiving an order for treatment under this section, the Department shall order a report of all pending cases, warrants, and detainers for the defendant and forward a copy of the report to the court, the defendant, and the defendant's last attorney of record.

* * *

(e) *Admission to facility.*—(1) A court may not order that the defendant be delivered for treatment until:

(i) The Department gives the court notice that an appropriate treatment program is able to begin treatment of the defendant;

(ii) Any detainer based on an untried indictment, information, warrant, or complaint for the defendant has been removed; and

(iii) Any sentence of incarceration for the defendant is no longer in effect.

Md. Code (1982, 2005 Repl. Vol., 2006 Supp.), § 8–507 of the Health–General Article.

The 2006 amendments did not affect the issue presented in this case—whether an order denying commitment under Section 8–507 is appealable. All references, therefore, to Section 8–507 are to the current provisions, unless otherwise noted.

sentenced to imprisonment for the balance of his natural life, concurrent with the sentence he was then serving. Fuller remains incarcerated.

Two years ago, Fuller, acting pro se, pursuant to Section 8–507 of the Health–General Article, filed a Petition for Commitment to the Alcohol and Drug Abuse Administration with the Circuit Court for Baltimore City, in which he alleged that he had an untreated 38–year history of alcohol and drug abuse, and that he was both an alcoholic and a heroin user "in a system which is infested with alcohol and drugs." Fuller contended that throughout his 27–year incarceration, he had demonstrated a need for, and requested but received, only limited and inadequate care, supervision, and treatment for his substance abuse addictions and that this failure had impeded his complete rehabilitation.

On March 15, 2005, Judge Clifton J. Gordy of the Circuit Court for Baltimore City denied the petition.[2] Fuller noted an appeal to the Court of Special Appeals, presenting three questions for review.[3] Fuller contended, in addition to arguing that the judge abused his discretion by denying Fuller's petition and erred by not articulating his reasoning, that the Court of Special Appeals had jurisdiction to entertain the appeal under either the final judgment rule or the collateral order doctrine. In a reported opinion, Chief Judge Joseph F.

---

**2.** The Order provided:

Upon the aforegoing Petition for Commitment to the Alcohol and Drug Abuse Administration, pursuant to Health General Article, Section 8–507(B)(1)–(2), after a fair and full consideration of all the facts and circumstances it is this 7th day of March, 2005;

ORDERED that Defendant's Petition for Commitment to the Alcohol and Drug Abuse Administration is hereby DENIED.

**3.** The questions presented to the Court of Special Appeals were:

1. Does this Court have jurisdiction to review the circuit court's denial of a petition for commitment pursuant to Health–General Article § 8–507?

2. Did the circuit court err by not articulating its reasons for denying the petition?

3. Assuming *arguendo* that the circuit court correctly interpreted and applied the law, did it abuse its discretion by denying the petition?

Murphy, writing for the court, held that the denial of Fuller's petition was not appealable and dismissed his appeal. *Fuller v. State*, 169 Md.App. 303, 900 A.2d 311 (2006). In reaching its conclusion, the court determined that nothing in Section 8–507, or its legislative history, reflected that a direct appeal would lie from the denial of a petition for commitment under Section 8–507. *Id.* at 308–09, 900 A.2d at 314. Further, the court remarked that the denial of Section 8–507 petitions are similar to the denial of Rule 4–345 [4] motions for modification of a sentence, and cited *Costello v. State*, 237 Md. 464, 206 A.2d 812 (1965), for the proposition that no direct appeal lies from the denial of a motion for modification of a sentence. The court also explicitly addressed the collateral order doctrine, deeming it "inapplicable to the case at bar because this Court no longer has jurisdiction to review the final judgments of conviction to which the order at issue is allegedly 'collateral'." *Fuller*, 169 Md.App. at 310–11, 900 A.2d at 315–16.

We granted Fuller's petition for writ of certiorari, which presented the following question for our review:

---

**4.** Rule 4–345 states:

 (a) **Illegal Sentence.** The court may correct an illegal sentence at any time.

 (b) **Fraud, Mistake, or Irregularity.** The court has revisory power over a sentence in case of fraud, mistake, or irregularity.

 (c) **Correction of Mistake in Announcement.** The court may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding.

 (d) **Desertion and Non-support Cases.** At any time before expiration of the sentence in a case involving desertion and non-support of spouse, children, or destitute parents, the court may modify, reduce, or vacate the sentence or place the defendant on probation under the terms and conditions the court imposes.

 (e) **Modification Upon Motion.** (1) Generally. Upon a motion filed within 90 days after imposition of a sentence (A) in the District Court, if an appeal has not been perfected or has been dismissed, and (B) in a circuit court, whether or not an appeal has been filed, the court has revisory power over the sentence except that it may not revise the sentence after the expiration of five years from the date the sentence originally was imposed on the defendant and it may not increase the sentence.

Md. Rule 4–345.

Is a denial of a petition for commitment for substance abuse treatment pursuant to Section 8–507 of the Health–General Article an appealable order?

*Fuller v. State,* 394 Md. 478, 906 A.2d 942 (2006). We shall hold that the denial of a petition for commitment for substance abuse treatment pursuant to Section 8–507 of the Health–General Article is not an appealable order.

## II. Discussion

Fuller contends that the Circuit Court's Order denying his petition for commitment under Section 8–507 is appealable as a final judgment under Section 12–301 of the Courts and Judicial Proceedings Article [5] because the denial resolved the issue contained in the petition and left no further action for the circuit court to take. Alternatively, Fuller argues that the order was appealable under the collateral order doctrine because it conclusively determined an important issue, otherwise unreviewable, which is completely separate from the merits of the underlying action. Fuller also analogizes the denial of his petition to the denial of a motion for modification of a sentence under Rule 4–345(e),[6] contending that our decisions in *State v.*

---

**5.** Section 12–301 of the Courts and Judicial Proceedings Article provides:

Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment.

Md.Code (1974, 2002 Repl. Vol.), § 12–301 of the Courts and Judicial Proceedings Article.

Fuller conceded in his brief that none of the exceptions contained in Section 12–302 of the Courts and Judicial Proceedings Article are applicable in the present case.

**6.** Fuller also analogizes the denial of his Section 8–507 petition to the denial of a motion pursuant to Federal Rule of Criminal Procedure 35(b), asserting it is the equivalent of Rule 4–345(e). We, however, in *Greco v. State,* 347 Md. 423, 701 A.2d 419 (1997), analyzed Rule 4–

*Kanaras*, 357 Md. 170, 742 A.2d 508 (1999), and *Herrera v. State*, 357 Md. 186, 742 A.2d 517 (1999), lead to the conclusion that an appeal of the denial of a motion to modify a sentence is appealable. Further, Fuller suggests that the rationale for refusing to allow appellate review of the denial of a motion for modification—because the decision is discretionary—was obviated by this Court in *Merritt v. State*, 367 Md. 17, 785 A.2d 756 (2001). He also contends that the appeal of the denial of his petition is not barred by the Post Conviction Procedure Act.[7]

---

345(b), the predecessor to 4–345(e), in juxtaposition to Federal Rule of Criminal Procedure 35(b), and noted that, despite similarities in the language between the two rules, "there are significant differences between the current Maryland rule and its federal counterpart," such that the federal rule and accompanying "federal decisions do not embody the appropriate rationale for interpreting [the] Maryland rule." *Id.* at 434, 438, 701 A.2d at 424, 426.

7. Fuller does not contend, however, that his Section 8–507 petition is a collateral challenge to his sentence under the Post Conviction Procedure Act, which "established a comprehensive scheme providing a remedy for challenging collaterally the legality of incarceration under conviction of crime and sentence of death or imprisonment therefor." *Davis v. State*, 285 Md. 19, 22, 400 A.2d 406, 407 (1979). Section 7–102 of the Criminal Procedure Article, entitled "Right to begin proceeding," states:

(a) *In general.*—Subject to subsection (b) of this section, §§ 7–103 and 7–104 of this subtitle and Subtitle 2 of this title, a convicted person may begin a proceeding under this title in the circuit court for the county in which the conviction took place at any time if the person claims that:
(1) the sentence or judgment was imposed in violation of the Constitution of the United States or the Constitution or laws of the State;
(2) the court lacked jurisdiction to impose the sentence;
(3) the sentence exceeds the maximum allowed by law; or
(4) the sentence is otherwise subject to collateral attack on a ground of alleged error that would otherwise be available under a writ of habeas corpus, writ of coram nobis, or other common law or statutory remedy.
(b) *Requirements to begin proceedings.*—A person may begin a proceeding under this title if:
(1) the person seeks to set aside or correct the judgment or sentence; and
(2) the alleged error has not been previously and finally litigated or waived in the proceeding resulting in the conviction or in any other

The State, conversely, argues that the Circuit Court's Order denying Fuller's petition for commitment under Section 8–507 is not appealable. The State contends that the denial of Fuller's petition did not constitute a final judgment because it did not determine and conclude Fuller's rights or deny him the means of further prosecuting or defending his rights. The State also argues that the collateral order doctrine is inapplicable because the denial of Fuller's petition did not resolve an important issue and that the issue was not completely separate from the merits of the underlying action. Additionally, the State maintains that the denial of Fuller's Section 8–507 petition is akin to the denial of a motion for modification, but that our decisions in *Kanaras* and *Herrera* did not alter the general rule that a sentence not alleged to be illegal is generally not appealable, citing *Costello v. State*, 237 Md. at 464, 206 A.2d at 812, and *Wilson v. State*, 227 Md. 99, 175 A.2d 775 (1961), as viable. The State also argues that the Post Conviction Procedure Act precludes Fuller's appeal of the denial of his petition.

In Maryland, the right to seek appellate review is statutory; the Legislature can provide for, or preclude, the right of appeal. *See* Maryland Code (1974, 2002 Repl. Vol.), Section 12–301 of the Courts and Judicial Proceedings Article ("The right of appeal exists from a final judgment entered by a court ... unless ... the right of appeal is expressly denied by law."); *State v. Manck*, 385 Md. 581, 596, 870 A.2d 196, 205 (2005), quoting *State v. Green*, 367 Md. 61, 77, 785 A.2d 1275, 1284 (2001) ("[Q]uestions of appealability have today become entirely governed by statutes."); *State v. Bailey*, 289 Md. 143, 147, 422 A.2d 1021, 1024 (1980) ("We begin our consideration by recognizing that any right of appeal, in either a civil or criminal case, must find its source in an act of the legislature."). The statutory provision at issue, Section 8–507 of the

proceeding that the person has taken to secure relief from the person's conviction.

Md.Code (2001), § 7–102 of the Criminal Procedure Article.

Health–General Article, does not include any provision regarding appealability.

An appeal, ordinarily, must await the entry of a final judgment. *See* Maryland Code (1974, 2002 Repl. Vol), Section 12–302 of the Court and Judicial Proceedings Article. To be a final judgment, the decision "must be so final as to determine and conclude rights involved, or deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding." *Sigma Reproductive Health Center v. State,* 297 Md. 660, 665, 467 A.2d 483, 485 (1983); *Gittings v. State,* 33 Md. 458 (1871). One exception to the final judgment rule is the collateral order doctrine, that "applies to a 'narrow class of orders, referred to as collateral orders, which are offshoots of the principal litigation in which they are issued and which are immediately appealable as "final judgments" without regard to the posture of the case'." *Jackson v. State,* 358 Md. 259, 266–67, 747 A.2d 1199, 1203 (2000) (citations omitted).

The case *sub judice* raises the issue of whether the denial of a petition under Section 8–507 of the Health–General Article is appealable. Fuller and the State both assert that the denial of his Section 8–507 petition for commitment to a drug treatment program is analogous to the denial of a motion for modification under Rule 4–345(e). While Fuller contends that the denial of a motion for modification is appealable, the State argues that the denial of a motion to modify is not directly appealable when the motion does not challenge the legality of the sentence. Both Fuller and the State cite to our opinions in *State v. Kanaras,* 357 Md. at 170, 742 A.2d at 508, and *Herrera v. State,* 357 Md. at 186, 742 A.2d at 517.

In *Kanaras,* we had the occasion to explore the interaction between the Post Conviction Procedure Act and the appealability of the denial of a motion to correct an allegedly illegal sentence under Rule 4–345(a). Judge John C. Eldridge, writing for this Court, elucidated that the appeal from a trial court's denial of a motion to correct an illegal sentence was not precluded by the Post Conviction Procedure Act, explicitly

overruling *Wilson,* 227 Md. at 99, 175 A.2d at 776, which had held that a motion to correct an illegal sentence under former Maryland Rule 744(a),[8] the precursor to Rule 4–345(a), is a statutory remedy within the meaning of the Act, and thus the denial of such motion is not appealable,[9] and reconciling *Costello,* 237 Md. at 469–70, 206 A.2d at 815, which cited *Wilson* for the proposition that "the Post Conviction Procedure Act provides that no direct appeal lies from the denial of a motion by the trial court for modification or reduction of the sentence":

> The Court in *Costello,* however, did more than "indicate" its views on the merits. It discussed in detail the merits, held that the trial judge had not erred in imposing sentence, and concluded: "We have considered all of the appellant's contentions, and find no violation of any of his constitutional or legal rights." More significantly, instead of dismissing the appeal as was done in *Brady* and *Wilson,* the Court in *Costello* "affirmed" the trial court's judgment. Interestingly, the judge who had authored the *Brady* opinion for the

---

8. Maryland Rule 744(a), as applied in *Wilson,* stated: "The court may correct an illegal sentence at any time." Md. Rule 744(a).

9. In reaching our conclusion in *Wilson,* we distinguished *Roberts v. Warden of Maryland Penitentiary,* 206 Md. 246, 111 A.2d 597 (1955), in which we had determined that the right to appeal the denial of a motion to correct an illegal sentence under Rule 10(a) of the Maryland Criminal Rules of Practice and Procedure, the predecessor of Rules 744(a) and 4–345(a), existed before the enactment of the Post Conviction Procedure Act. *Roberts,* 206 Md. at 255, 111 A.2d at 601. Rule 10(a) provided that "[t]he Court may correct an illegal sentence at any time." Md. Criminal Rules of Practice and Procedure 10(a).

In *Roberts,* we relied upon *Madison v. State,* 205 Md. 425, 109 A.2d 96 (1954), in which we determined that an appeal lies from an order overruling a motion to correct an illegal sentence:

> In Maryland all judgments are under the control of the court during the term in which they are entered, an during that time the court has inherent power to strike out or modify judgments in both civil and criminal cases. In this State no appeal lies from an order striking out a judgment, but an appeal lies from an order overruling a motion to strike out a judgment, as the liability of the defendant is thereby fixed and determined, and if he had no right of appeal therefrom he would be without a remedy.

*Madison,* 205 Md. at 431, 109 A.2d at 99.

Court dissented in *Costello*, not on the ground that the appeal should have been dismissed, but on the ground that the appellant had been illegally sentenced and that, therefore, the judgment below should be reversed.

*Kanaras*, 357 Md. at 177, 742 A.2d at 513.

In our determination that an appeal from the denial of a Rule 4–345(a) motion to correct an illegal sentence was not precluded by the Post Conviction Procedure Act, we stated that our rule-making authority did not render the Maryland Rules equivalent to a statute enacted by the General Assembly, that a Rule 4–345(a) motion was not an independent separate cause of action, and that a motion to correct an illegal sentence does not necessarily challenge the validity of incarceration:

> The reason for the non-appealability holdings ... was the view that a motion to correct an illegal sentence, authorized by Rule 4–345(a), is a "statutory remed[y] ... for challenging the validity of incarceration under sentence of ... imprisonment" within the meaning of subsection (e) of the Post Conviction Procedure Act, Art. 27, § 645A(e). As pointed out in the dissenting opinion in *Valentine* [*v. State*], 305 Md. [108] at 123, 501 A.2d [847] at 854, however,
>
> > "a motion to correct an illegal sentence is not a 'statutory' remedy. Statutes are enacted by the General Assembly of Maryland. The Maryland Rules are adopted by the Court of Appeals. As the Wilson court noted, the Maryland Constitution does provide that rules adopted by the Court 'shall have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise by law.' Maryland Constitution, Art. IV, § 18(a). Nonetheless, the fact that the Maryland Rules have the force of law does not mean that a rule is a statute."
>
> Furthermore, the language of the Post Conviction Procedure Act obviously refers to separate common law or statutory causes of action, such as habeas corpus or coram nobis actions which are separate civil actions. It is doubtful that this Court's rule-making authority would extend to the

creation o f a separate cause of action. In any event, there is no indication in the language or history of Rule 4–345 that the court intended to create a separate cause of action. While a motion under Rule 4–345 may be made at any time, it is part of the same criminal proceeding and not a wholly independent action. The Rule simply grants the trial court limited continuing authority in the criminal case to revise the sentence.

In addition, subsection (e) of the Post Conviction Procedure Act refers to habeas corpus, coram nobis, or statutory actions "for challenging the validity of incarceration. . . ." A motion under Rule 4–345(a), however, is not specifically or exclusively designed to challenge the "validity" of incarceration. There may be illegalities in a sentence which have nothing to do with the validity of the incarceration.

Consequently, we hold that the language of the Post Conviction Procedure Act does not preclude an appeal from a circuit court's ruling under Rule 4–345.

*Kanaras*, 357 Md. at 182–84, 742 A.2d at 515–16 (citations omitted).

Section 7–107 of the Post Conviction Procedure Act precludes appeals in cases "in which a person challenges the validity of confinement under a sentence of death or imprisonment by seeking the writ of habeas corpus or the writ of coram nobis or by invoking a common law or statutory remedy other than this title." Maryland Code (2001), Section 7–107 of the Criminal Procedure Article. Although the State asserts that Fuller is challenging the validity of his incarceration, we agree with Fuller that he is not challenging the validity of his incarceration but rather asking to serve part of his sentence in a Department of Health and Mental Hygiene facility where he would receive better drug treatment.

■ In *Herrera*, decided the same day as *Kanaras*, we exercised appellate jurisdiction over the denial of a motion for modification of a sentence, under former Rule 4–345(b). Herrera's motion for modification, however, had challenged the *legality* of his sentence, and upon this premise we applied

*Kanaras* to permit an appeal, stating that "[u]nder our hold-ing[ ] in ... *State v. Kanaras, supra,* there was *no illegality or infirmity* in Herrera's sentence which required the Circuit Court to grant relief under Rule 4–345." *Herrera,* 357 Md. at 189, 742 A.2d at 519 (emphasis added). Therefore, under our jurisprudence the denial of a motion to correct an illegal sentence, in the form of a motion for modification, is appealable.

Fuller equates the denial of a petition for commitment under Section 8–507 to the denial of a motion to correct an allegedly illegal sentence, and argues that we should *sua sponte* exercise appellate jurisdiction, relying upon *Kanaras,* 357 Md. at 170, 742 A.2d at 508. Here, however, there is no appellate jurisdiction. Fuller's Section 8–507 petition is not akin to a motion to correct an illegal sentence, because it constitutes a statutory cause of action that is separate from his conviction.[10] *See Scott v. State,* 379 Md. 170, 182 n. 6, 840 A.2d 715, 722 n. 6 (2004) ("We observe that ... motions to correct an illegal sentence occur as 'part of the same criminal proceeding and not a wholly independent action' ...."), citing *Kanaras,* 357 Md. at 183, 742 A.2d at 516.

Fuller, nonetheless, asserts that the denial of his Section 8–507 petition could be analogized to the denial of a motion for modification under Rule 4–345(e), and contends that such orders are appealable under our opinions in *Kanaras, Herrera,* and *Greco v. State,* 347 Md. 423, 701 A.2d 419 (1997). Conversely, the State argues that because our holdings in *Kanaras* and *Herrera* did not overrule *Costello,* the principal we iterated therein—"no direct appeal lies from the denial of a motion by the trial court for modification or reduction of the

---

10. As we have stated heretofore, we are analyzing the current provisions of Section 8–507. Fuller would even have less of a basis to challenge the denial of his petition under the pre–2006 version of Section 8–507 based upon the analogy to a motion to correct an illegal sentence because Section 8–507 was only applicable if "(1) No sentence of incarceration is currently in effect; and (2) No detainer is currently lodged." Md. Code (1982, 2000 Repl. Vol., 2004 Supp.), § 8–507(a) of the Health–General Article.

sentence"—remains authoritative. *Costello*, 237 Md. at 469–70, 206 A.2d at 815, citing *Gleaton v. State*, 235 Md. 271, 277, 201 A.2d 353, 356 (1964). We disagree with both Fuller and the State. We disagree with the State's rationale relying upon *Costello* and *Gleaton*, that a decision left to the discretion of the trial court judge is not reviewable on appeal, because that justification was obviated in *Merritt*, 367 Md. at 17, 785 A.2d at 756, in which we examined the appealability of the denial of a motion for a new trial. Judge Eldridge, again writing for this Court, stated:

> Initially, we flatly reject the State's argument . . . that the denial of a motion for new trial is absolutely unreviewable on appeal except for the situation where the trial judge has failed to exercise any discretion. . . . [T]he Maryland case law governing appellate review of rulings on motions for new trials has changed and evolved over the years. Moreover, language from older cases has sometimes been carelessly repeated in more recent cases without taking into consideration the changes in the law. The State's argument in the case at bar, however, represents an effort to change the present law, to adopt a rule from the past, and to require that our most recent cases on the subject be overruled. This we decline to do.
>
> The early opinions of this Court clearly took the position that a trial court's ruling on a motion for a new trial was not subject to appellate review under any circumstances. . . .
>
> * * *
>
> *[T]he principle that rulings on motions for new trial were unreviewable on appeal appears to have been simply an application of the more general rule, adhered to by appellate courts at an earlier time, that any trial court ruling on a discretionary matter was insulated from appellate review.*

*Id.* at 24–25, 785 A.2d at 760–61 (emphasis added).

Nevertheless, we have alluded to the possibility that the denial of a motion for modification may be appealable under the final judgment rule in dicta in *Greco*, 347 Md. at 423, 701 A.2d at 419. The issue presented in *Greco* was whether the

trial court had jurisdiction to consider a motion for modification more than ninety days after conviction, but within ninety days of the granting of a previous motion for modification. We answered the question affirmatively, rejecting the rationale that trial judges need to be "protect[ed] . . . from continual and repeated requests to modify sentences." *Id.* at 436, 701 A.2d at 425. We further remarked, though, "[i]f the motion is denied, the defendant is *finished*—he or she may not file another motion for reconsideration." *Id.* (emphasis added).

The denial of a Section 8–507 petition for commitment, however, is not analogous to the denial of a motion for modification. Unlike a motion for modification, a petition for commitment does not affect the length of a sentence, only where a portion of it is to be served. It also initiates a statutory cause of action separate from the conviction, and may be filed repeatedly "at any other time the defendant voluntarily agrees to participate in treatment." These two characteristics render the Section 8–507 petition more akin to habeas corpus actions, which came into being statutorily in Maryland in 1809.

The original habeas corpus statute,[11] derived from the English common law, *In re Glenn*, 54 Md. 572, 607, (1880), was

---

**11.** The habeas corpus statute provided:

[I]f any person . . . shall be or stand committed or detained as aforesaid for any crime, or under any colour or pretence whatsoever, unless it be for treason or felony, plainly expressed in the warrant of commitment, the prisoner or person detained, not being convict or in execution of legal process, or any one on his behalf, may complain to the chancellor, or any judge of the court of appeals, or of the county courts of this state, or to the chief justice *of the court of oyer and terminer and gaol delivery for Baltimore County*, who, at the request of such prisoner or person detained, or other person on his behalf . . . to award and grant a habeas corpus, to be directed to the officer or other person in whose custody the party committed or detained shall be, returnable immediately before the said chancellor, judge, or chief justice, and upon service thereof as aforesaid, the officer or person in whose custody the party is so committed or detained, shall, within the times before respectively limited, bring the prisoner or person detained before the said chancellor, judge or chief justice, before whom the writ is made returnable, or in case of his absence, before any

similarly silent as to the appealability of denials of petitions for relief, as is Section 8–507 of the Health–General Article. In addressing the appealability of the denial of a petition for a writ of habeas corpus under the statute, this Court had held that there was no right to appeal its denial. *Coston v. Coston,* 25 Md. 500 (1866); *In re Coston,* 23 Md. 271 (1865); *Bell v. State,* 4 Md. (Gill) 301 (1846). In *Coston, In re Coston,* and *Bell,* we opined that the denial of a habeas corpus petition was not appealable because the decision was left to the discretion of the trial judge—a rationale we later rejected in Merritt— and because a denial was not a final judgment in as much as the petitioner had the ability to repeatedly apply for a writ of habeas corpus. In *In re Coston,* we stated:

> Among the reasons assigned for this conclusion are, that the writ of *habeas corpus,* is a proceeding summary in its character, addressed to the discretion of the Judge or tribunal, to whom the application is made, so far as the discharge of the party is concerned; *a proceeding where, in*

other of them, with the return of the writ, and the true causes, if any, of the commitment or detainer, and thereupon the chancellor, judge or justice, before whom the prisoner shall be brought, shall, within two days thereafter, discharge him or her from imprisonment, taking his or her recognizance, with security, in any sum, according to the direction of the chancellor, judge or justice, having regard to the circumstances of the prisoner and the nature of the offence, for his or her appearance in the county court the term following, or in some other court where the offence is properly cognizable, as the cause may require, and then also certify the same writ, with the return thereof, and the said recognizance, into the said court where such appearance is to be made, unless it appear to the chancellor, judge or justice, that the party so committed is detained upon a legal process, under a warrant out of some court that hath jurisdiction of criminal matters, or by some warrant signed with the hand of any of the said judges or justices, or some justice of the peace, for such matter or offence for which by law the prisoner is not bailable, or if it shall appear that such person is detained without any legal warrant or authority, such chancellor, judge or justice, shall immediately release and discharge such person from such illegal detention or restraint. 1809 Md. Laws, Chap. 125 (emphasis in original). The court of "oyer and terminer" referred to a court with the authority to "hear felony and treason cases," and the court of "gaol delivery" referred to a court with the authority to "hear all criminal cases of those held in county jails." Black's Law Dictionary 288 (8th ed., 1999).

*many cases, the evidence upon which the judgment is founded cannot be presented to the appellate court, and is not final and conclusive upon the party applying for the writ, as he may prefer a similar application to any other Judge or court of the State.*

23 Md. at 272 (emphasis added). *See also Bell,* 4 Md. (Gill) at 304 (remarking that the dismissal of a habeas corpus petition did not have any of the characteristics of an appealable final judgment because it "is not final and conclusive upon the party applying for the writ; as he may prefer a similar application, to any other Judge or Court of the State"). Later, in *Coston,* 25 Md. at 500, we commented that the denial of a petition for a writ of habeas corpus was not a final judgment because it does not "deprive the petitioner of the right of petitioning again":

Although the petition should be released by the order of the Judge or court to whom he made application, if that order is subject to revision and reversal by an appellate court, *the final judgment, to be of any avail, must deprive the petitioner of the right of petitioning again;* whereas, the right of petitioning for a habeas corpus, is unlimited in its nature, and the application may be renewed *toties quoties,*[12] as long as the petitioner is confined, and a Judge or court can be found to whom he may address his prayer for relief.

*Id.* at 506 (emphasis added).

In 1945, however, the General Assembly provided an aggrieved party with the statutory right to appeal the denial of a petition for a writ of habeas corpus or from a "final order of the Court" in habeas corpus proceedings:

The aggrieved applicant may appeal to the Court of Appeals from the refusal to issue a writ or from a final order remanding him or dismissing the proceedings; and the Attorney General or the State's Attorney for Baltimore City or the County in which such application was presented may appeal on behalf of the State.

---

**12.** "Toties quoties" is a Latin phrase meaning "as often as." Black's Law Dictionary 1528 (8th ed., 1999).

1945 Maryland Laws, Chapter 702; Maryland Code (1945), Article 42, Section 3C.[13] This statutory enactment, providing a petitioner the ability to seek appellate review of a denial of a petition for habeas corpus, was analyzed by then-retired former Chief Judge Charles Marke ll in *Review of Criminal Cases in Maryland by Habeas Corpus and by Appeal*, in the University of Pennsylvania Law Review, when he stated:

> The Act of 1945 provided that the "aggrieved" applicant might appeal to the Court of Appeals from refusal to issue the writ or from a final order remanding him or dismissing the proceedings and that the Attorney General or the State's Attorney might appeal on behalf of the state. The general right of appeal under the Act of 1945 was equally applicable to the petitioner and the state. However, the nature of habeas corpus procedure makes it, in operation, one-sided against the prosecutors. Before 1945, the petitioner *in effect* had the right of 36 appeals by applications to every other judge in the state. One judge might set at naught the judgment of 36 other judges by releasing on habeas corpus a prisoner whom the other judges would not release. The petitioner still has 36 such appeals besides an appeal to the Court of Appeals.

> \* \* \*

> *The result[ ] and the evident purpose[ ] of the Act[ ] of . . . 1945 [has] been to put an end to long-standing abuse of the writ and to preserve the writ for its historical objects as a bulwark of liberty. This has been done by . . . giving a general right of appeal, thus substituting authoritative statements of law for the action of 37 judges, of equal authority, not subject to review by any higher court.* The right of appeal, given without prepayment of costs, is as freely available to either party as the writ itself.

Judge Charles Markell, *Review of Criminal Cases in Maryland by Habeas Corpus and by Appeal*, 101 U. Pa. L.Rev.

---

**13.** The subsequent history of the right to appeal the denial of a petition for a writ of habeas corpus was thoroughly discussed in our opinion in *Gluckstern v. Sutton*, 319 Md. 634, 574 A.2d 898 (1990).

1154, 1157, 1162–63 (1953) (footnotes omitted) (emphasis added).

 The General Assembly, then, in the history of habeas corpus petitions, proactively and clearly conferred the right of appeal to petitioners denied relief, whereas this Court had refused appellate review because the petition in issue could have been filed repeatedly. This was not done in Section 8–507 when petitioners were given the opportunity to repeatedly file their suit. We generally presume that the Legislature acts with full knowledge of prior and existing law, legislation, and policy, *Collins v. State*, 383 Md. 684, 692–93, 861 A.2d 727, 732 (2004); *Bingman v. State*, 285 Md. 59, 65, 400 A.2d 765, 768 (1979); *Bowers v. State*, 283 Md. 115, 127, 389 A.2d 341, 348 (1978), and obviously could have provided an appellate remedy for the denial when a petition could be repeatedly filed.

Fuller also asserts that he has the right to appeal the denial of his Section 8–507 petition because it is a final judgment, citing to *In re Special Investigation No. 236,* 295 Md. 573, 458 A.2d 75 (1983), and *In re Special Investigation No. 231,* 295 Md. 366, 455 A.2d 442 (1983), for the proposition that if a motion is the only matter pending before a court, that court's ruling thereupon is a final judgment and therefore is immediately appealable.

In *In re Special Investigation No. 231,* as part of an investigation pertaining to certain health care providers, the Attorney General had issued several subpoenas; four of the individuals issued subpoenas sought to be represented by the same attorney. The State attempted to use the Code of Professional Responsibility to prevent their joint representation. 295 Md. at 367, 368, 455 A.2d at 442, 443. After the motion to disqualify the attorney was denied, we stated that the denial was a final judgment, and heard the merits of the appeal:

> We have consistently held that a final judgment from which an appeal will lie is one which settles the rights of the parties or concludes the cause.

In this case the proceeding consisted only of a motion to disqualify the attorney in question. Once the motion was denied there was nothing more to be done in this particular case. There was nothing else before the court. There was nothing pending. Hence, we conclude that the order of the trial judge here settled the rights of the parties and terminated the cause. Thus, it was a final judgment.

*Id.* at 370, 455 A.2d at 444 (citations omitted).

In the case *sub judice,* however, the denial of Fuller's petition did not settle Fuller's ability to seek commitment pursuant to Section 8–507 for substance abuse treatment. Under Section 8–507, a petition may be filed at any "time the defendant voluntarily agrees to participate in treatment." Thus, petitions may be filed repeatedly and the denial of a single petition does not preclude Fuller from filing another.

In *In re Special Investigation No. 236,* 295 Md. at 573, 458 A.2d at 75, the issue was whether the grant of a motion to obtain the return of financial records from a grand jury constituted a final judgment. Relying on our decision in *In re Special Investigation No. 231,* we noted that "[o]nce that motion was *granted* there was nothing more to be done in this particular case" because the documents would have been returned to the petitioner, and out of the grand jury's control. *In re Special Investigation No. 236,* 295 Md. at 575, 458 A.2d at 76 (emphasis added). The return of the final records to the petitioner, thus, "settled the rights of the parties and terminated the cause" for good. *Id.* In the case *sub judice,* again, the denial of Fuller's petition did not settle his rights under Section 8–507 for good because his ability to seek commitment under the statute was not terminated.

 Fuller also argues that the denial of his Section 8–507 petition is appealable under the collateral order doctrine exception to the final judgment rule. The collateral order doctrine "treats as final and appealable a limited class of orders which do not terminate the litigation in the trial court." *Jackson,* 358 Md. at 266, 747 A.2d at 1202. To fall within the exception, the decision must *"conclusively determine the dis-*

*puted question;* resolve an important issue; be completely separate from the merits of the action; and be effectively unreviewable on appeal from a final judgment." *Id.* at 266–67, 747 A.2d at 1203 (emphasis added).

The Court of Special Appeals determined that the collateral order doctrine was inapplicable in the present case, asserting: "The 'collateral order doctrine' is inapplicable to the case at bar because this Court no longer has jurisdiction to review the final judgments of conviction to which the order at issue is allegedly 'collateral'." *Fuller,* 169 Md.App. at 310, 900 A.2d at 315. Moreover, after iterating the requirements of the collateral order doctrine, the court remarked: "The denial of a post-sentence petition for commitment to ADAA is simply not 'an issue that is completely separate from the merits of the action'." *Id.* at 311, 900 A.2d at 316. In this we disagree; the statute creating the ability to petition for commitment for substance abuse treatment created a separate and independent cause of action from the merits of the conviction. Nevertheless, we do agree that the collateral order doctrine does not confer upon Fuller the ability to appeal because the disputed question was not conclusively determined, based upon the fact that a Section 8–507 petition can repeatedly be filed "at any other time the defendant voluntarily agrees to participate in treatment." Fuller's rights under Section 8–507 were not completely settled by the denial of his petition, and the collateral order doctrine is not applicable.

For all of the aforementioned reasons, we hold that an order denying an inmate commitment to a drug treatment program pursuant to Section 8–507 of the Health–General Article is not appealable.

***JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED WITH COSTS.***