970 A.2d 951

**George Wesley HOWSARE**

v.

**STATE of Maryland.**

**No. 1256, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

May 6, 2009.

George Z. Petros, Camp Springs, for Appellant.

Jessica V. Carter (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: DAVIS, SALMON and J. FREDERICK SHARER (Retired Specially Assigned), JJ.

SALMON, Judge.

To understand George Howsare's contentions in this appeal, and the counter-contentions of the appellee, the State of Maryland, it is necessary to understand the procedural background surrounding Howsare's 2001 conviction and sentencing, and what happened during the years thereafter. That background is set forth in Part I, below.

**I**

On March 5, 2001, Howsare was indicted in the Circuit Court for Charles County for various sex crimes. All the crimes were alleged to have been committed against the daughter of a woman who lived with Howsare. At the time the crimes were committed, the victim was less than 14 years old. Count I of the indictment alleged that between July 1 and August 30, 2000, Howsare committed sexual abuse against a minor child under the age of 18, in violation of Md.Code Ann., Art. 27, section 35C(b)(1). Count II of the indictment alleged that Howsare, in violation of Md.Code Ann., Art. 27,

section 463, committed second-degree rape of the victim between June 22 and June 23, 2000.

Howsare, on August 8, 2001, entered a plea of guilty to Count I and entered an Alford plea [1] to the crime charged in Count II. The Honorable Richard Clark sentenced Howsare, in accordance with a plea agreement, to 20 years imprisonment for the crime alleged in Count II. The commencement date of that sentence was February 5, 2001. As to Count I, the court sentenced appellant to 10 years imprisonment, all suspended in favor of five years supervised probation. Immediately after sentencing, the State's Attorney *nolle prossed* the three remaining counts in the indictment.

Two weeks after sentencing, Howsare filed a motion to reconsider his sentence. That motion was promptly denied.

On January 9, 2006, Howsare, *pro se,* filed a petition for post-conviction relief in which he alleged, among other things, ineffective assistance of counsel. A supplemental petition for post-conviction relief was filed on June 19, 2006, after an attorney entered his appearance on Howsare's behalf. A hearing on the post-conviction petition took place on June 29, 2006. At one point in the post-conviction hearing, the presiding judge, the Honorable Robert L. Nalley, opined that if he were in the position of the prosecutor, he would concede that Howsare was entitled to a new trial. The judge then asked Howsare if a new trial was what he really wanted, noting that another judge might not be as "lenient" as the original sentencing judge. This question provoked a colloquy between Howsare, his attorney, and Judge Nalley. The result of this exchange was an agreement between the court and Howsare that if the latter withdrew his petition for post-conviction relief, with prejudice, the court would sign an order for evaluation by the Maryland Department of Health and Mental Hygiene. Pursuant to this June 29, 2006 agreement, the court

---

1. *North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

signed an order prepared by Howsare's counsel that read as follows:

In resolution of Petitioner's request for post conviction relief, it is the 31 st day of July 2006;

ORDERED that, as his sole post conviction relief, Petitioner is hereby granted the right, pursuant to Md. Health Gen.Code Ann. § 8–505, to a[n] alcohol and drug evaluation by the Maryland Department of Health and Mental Hygiene; and it is further;

ORDERED, that the Assignment Office shall appoint a Judge to preside over the H.G. §§ 8–505 and 8–507 matter; and it is further

ORDERED, that the Petitioner's Petition for Post Conviction Relief and Supplemental Petition for Post Conviction Relief are hereby WITHDRAWN WITH PREJUDICE.

The Maryland Department of Health and Mental Hygiene ("DHMH") on September 6, 2006, notified the circuit court that it had evaluated Howsare and recommended that he receive in-patient residential treatment for his drug and alcohol problems.

On October 31, 2006, Judge Nalley held a hearing to consider the DHMH's recommendation. At the hearing, Howsare consented to the recommended treatment and testified that his long history of problems with the legal system stemmed from his addiction to alcohol and crack cocaine. It was also revealed at the hearing that Howsare currently was then serving an 8 year sentence imposed by the Circuit Court for St. Mary's County. The St. Mary's County sentence ran concurrently with the sentences imposed in the subject case.

Judge Nalley said at the hearing that he recognized that he could not order appellant to have drug treatment pursuant to section 8–507 of the Health General Article ("H.G."), unless the Circuit Court for St. Mary's County concurred. With the understanding that he would not sign an order until the St. Mary's County Circuit Court gave its approval, Judge Nalley said that if the St. Mary's County Court agreed he would

commit Howsare to Second Genesis, a drug treatment program. The judge went on to say:

> We will stay ... we will not suspend, not modify, but stay the execution of the fourteen years, sixty-seven day balance,[2] of the active sentence in this case in Count 2, effective at nine a.m. on November 30, '06 to endure until 9 a.m. on May 30th of '08. That's an eighteen month period ... [W]e will commit Mr. Howsare for treatment, pursuant to Section 8–507 [of the Health General Article]....

\* \* \*

> ... [I]f Mr. Howsare is successful ... it's certainly no more expensive to deal with him this way than it is to keep him where he is. May even be cheaper. It should be more productive than what's going on where he is now. And, it puts us in a position to feel a little more comfortable about the situation when eventually he gets out. And, I don't know when that's going to be. There are all kinds of possibilities there.

In response to Howsare's question regarding what would happen upon his return to court if he were successful in completing the Second Genesis program, Judge Nalley stated:

> That is to say that we look at the situation and I would expect anybody who is acting in my stead then would look at the situation as it appears then. Under normal circumstances, it would not be unreasonable to ... to perhaps suspend the rest of the sentence. I don't know. But, I'm not ... I'm not promising that's going to happen, but that's certainly in the cards. You don't make absolute promises.

Sometime between October 31, 2006 and January 31, 2007, the approval for drug treatment was obtained from the Circuit Court for St. Mary's County. On January 31, 2007, the

---

**2.** Because appellant's sentence commenced on February 5, 2001, as of November 30, 2006, he had 14 years, 67 days left to serve on his 20 year sentence.

Circuit Court for Charles County filed an Order that read as follows:

### ORDER FOR COMMITMENT TO THE DEPARTMENT OF HEALTH AND MENTAL HYGIENE FOR DRUG OR ALCOHOL TREATMENT, PURSUANT TO SECTION 8–507 OF THE HEALTH GENERAL ARTICLE

The Court, having found that the Defendant has an alcohol and/or drug dependency, having considered the report of the Defendant's evaluation, having found that the treatment that the Department of Mental Health and Hygiene ("DHMH") recommends to be appropriate and necessary, having obtained the written consent of the Defendant to obtain treatment and permit reporting back to the Court, and having learned that Defendant's 8–year sentence in St. Mary's County will not act as a detainer on Defendant as of February 14, 2007, it is this 30th day of January, 2007:

**ORDERED,** that the Defendant is committed to the Department of Health and Mental Hygiene ("DHMH") for inpatient/residential treatment at Second Genesis beginning as soon as a treatment bed becomes available and ending upon completion of treatment; and it is further

\* \* \*

**ORDERED,** that supervision of the Defendant shall be provided by DHMH in that the Defendant shall be released to DHMH when a treatment bed becomes available at Second Genesis; and it is further

**ORDERED,** that DOC shall transport the Defendant to Second Genesis for treatment on a date in which a treatment bed becomes available, and shall return the Defendant to Court upon the Defendant's completion of treatment; and it is further

\* \* \* \*

**ORDERED,** that the Department shall notify the Court upon Defendant's completion of treatment and shall provide

the Court with the discharge recommendations; and it is further

**ORDERED,** that Second Genesis shall transport the Defendant when notified by DHMH to do so and at DHMH's directions shall return the Defendant to the Court; and it is further

**ORDERED,** that the Commitment Order be amended to reflect that EXECUTION OF THE BALANCE OF SENTENCE IS HEREBY STAYED UPON THE DATE OF BED AVAILABILITY UNTIL COMPLETION OF TREATMENT, with credit for time served.

By counsel, on February 12, 2007, Howsare filed a motion for modification of sentence. The motion, after accurately setting forth the procedural background of this case, read as follows:

- ◆ Since the balance of Mr. Howsare's sentence was stayed (and not suspended) in order for him to attend treatment, it is Counsel's understanding that, upon completion of treatment, Mr. Howsare must seek a modification of sentence in order to have the remainder of the sentence suspended, as allowed by H.G. § 8–507 upon successful completion of treatment.

- ◆ Pursuant to Md. Rule 4–345(b), a Motion for Modification of Sentence **must** be filed **within 90–days** after imposition of the sentence. Consequently, counsel respectfully requests that the motion be held *sub curia* until Mr. Howsare completes treatment.

- ◆ Upon successful completion of treatment, Mr. Howsare will request a hearing on this motion.

**WHEREFORE,** Mr. Howsare respectfully requests that this Court:

- A. HOLD THIS MOTION *SUB CURIA* until counsel requests a hearing on said motion upon Mr. Howsare's successful completion of treatment.

Howsare remained incarcerated until a bed at Second Genesis became available on June 27, 2007, at which time he was

transported to the Second Genesis facility. He remained at Second Genesis until January 30, 2008. He then began an after-care program and was monitored by the Department of Parole and Probation.

The Circuit Court for Charles County held a hearing concerning Howsare's motion for modification of sentence on May 9, 2008. At the hearing, all parties agreed that Howsare had successfully completed the Second Genesis program. Howsare testified, without contradiction, that he was currently living with his girlfriend, had opened his own painting business, had purchased two motor vehicles for that business, and had obtained the proper business license and vehicular insurance required by law. He also testified that he had established credit and had purchased equipment necessary to conduct his business, and was fully compliant with all terms of probation.

At the May 9, 2008 hearing, Howsare's counsel asked the court to reimpose the original sentence but suspend all of it in favor of probation. Counsel stressed that if Howsare did not obey the conditions of probation, the court could require that Howsare go back to prison to serve the remainder of his sentence.

The prosecutor vigorously opposed the motion to reconsider. She said that appellant had "raped and abused his girlfriend's daughter from the time she was just eleven years old until the time she was fourteen." [3] In the prosecutor's words: "The community is entitled to its pound of flesh in this case. And, we want a pound of flesh back. We want him back in DOC. That's where he belongs. He should not be anywhere else for what he did to that victim in this case."

---

3. Appellant pled guilty to only one rape in Charles County and sexual abuse for about a two month period in that county. He was, however, also convicted of sexual offenses against the same minor child in St. Mary's County. The allegation that appellant "raped and abused" the minor for three years apparently refers to crimes committed in both counties.

The circuit court declined to modify Howsare's sentence. In explaining his decision, Judge Nalley said:

> I agree with everything Mr. Ribiello [Howsare's counsel] said on [Howsare's] behalf. And frankly, I am pleasantly ... pleased that, ... you got your life together. But frankly, I think that, ... I can't walk in other peoples' shoes. I just can't imagine how the parents of a child, to say nothing of the child herself, could deal with the enormity of and the heinousness of [your] behavior.

The judge went on to say that it was his job "to discourage people from giving in to their own visceral inclinations" as Howsare had done. He said:

> We have another pretty firm rule around here, that it doesn't make good sense for one Judge to second guess another. And, I am sure I said at the time that I signed the commitment order that Mr. Howsare's, you know, in State custody, and if he can get ... he personally can get some therapeutic benefit out of this kind of arrangement rather than vegetating, fine.

The court concluded by saying that he thought that the considerations to which the prosecutor gave voice were "paramount ones in this type of case." And, therefore, he refused to grant the motion to modify sentence. The court gave Howsare credit for six years and 271 days (2432 days) time served.

Howsare, on May 27, 2008, filed a motion for reconsideration of sentence. To date, no action has been taken on that motion.

Howsare filed a notice of appeal to this Court on Monday, June 9, 2008. On that same date, Judge Nalley instructed the Clerk of the Court to give Howsare an additional 20 days credit for time served. An amended commitment order was issued by the Clerk on June 10, 2008, awarding Howsare 2451 days credit (6 years and 290 days) for time served.

On June 20, 2008, Judge Nalley directed the Clerk to once again modify Howsare's commitment. He issued a memoran-

dum and order clarifying that Howsare was actually entitled to credit against his original sentence in the amount of·6 years and 360 days. The court's final calculation was arrived at by granting Howsare credit for six years and 143 days served in the Department of Corrections prior to June 27, 2007, plus 217 days served in residential treatment at Second Genesis.[4] The final amended commitment, dated June·23, 2008, states that Howsare's sentence was to begin on May 16, 2001.

## II

The State has filed a motion to dismiss this appeal. According to the State, the main reason the appeal should be dismissed is because appellant is appealing the May 9, 2008, denial of his motion to modify sentence. As the State correctly points out, denial of a motion to modify a sentence is not appealable. *See Hoile v. State*, 404 Md. 591, 617–18, 948 A.2d 30 (2008); *Fuller v. State*, 397 Md. 372, 395, 918 A.2d 453 (2007).

Appellant did not file a written opposition to the motion to dismiss. But, at oral argument in this Court, counsel for appellant advised that his client was appealing the failure of Judge Nalley to follow the procedures that he was required to follow once he granted appellant's request for treatment under Section 8–507 of the Health General Article. Although he does not say so explicitly, appellant's counsel evidently contends that due to this failure to follow proper procedure, the order dated January 31, 2007 that stayed appellant's sentence, amounted to an illegal sentence, which is appealable. *See Hoile*, 404 Md. at 617, 948 A.2d 30.

A review of Howsare's brief, when read in conjunction with his counsel's oral argument, reveals that the appellant takes the following position: 1) that when, as here, a defendant who is presently incarcerated asks a judge to send him to drug and/or alcohol treatment pursuant to sections 8–505 and 8–507

---

4. On the first page of the memorandum, the court said that Howsare was entitled to credit of six years and 340 days but the order itself said that he was entitled to six years and 360 days credit.

of the Health General Article, the court can only do so if the court suspends the balance of the defendant's sentence he is then serving; 2) if the defendant successfully completes drug treatment, the defendant should be brought back to court for a hearing; 3) at that hearing the court has the discretion either to send the defendant back to prison or to suspend the remainder of the sentence. It is the position of appellant that Judge Nalley, "in effect," did suspend his sentence prior to allowing him to undergo drug and alcohol treatment. Therefore, in appellant's view, the hearing held on May 9th was *not* one to modify a sentence pursuant to Rule 4–345, but was instead, a hearing contemplated by the H.G. Art., § 8–507.

Under all the circumstances of this case, we believe that the State is mistaken when it contends that appellant is attempting to appeal the denial of a motion to modify sentence. Accordingly, we will deny the motion to dismiss the appeal.[5]

## II

Effective October 1, 2006, H.G. Article § 8–507 was amended to read, in material part, as follows:

(a) *In general.*—Subject to the limitations in this section, a court that finds in a criminal case that a defendant has an alcohol or drug dependency may commit the defendant as a condition of release, after conviction, or at any other time the defendant voluntarily agrees to participate in treatment,

---

5. The State also argues that appellant did not file his appeal within 30 days of the May 9, 2008, denial of his motion. The appeal was filed on Monday, June 9, 2008, which was within 30 days because the 30th day fell on a Sunday, which is not counted. Md. Rule 1–203(b) reads:

**Computation of time before a day, act, or event.** In determining the latest day for performance of an act which is required by these rules, by rule or order of court, or by any applicable statute, to be performed a prescribed number of days before a certain day, act, or event, all days prior thereto, including intervening Saturdays, Sundays, and holidays, are counted in the number of days so prescribed. The latest day is included in the determination unless it is a Saturday, Sunday, or holiday, in which event the latest day is the first preceding day which is not a Saturday, Sunday, or holiday.

to the Department for treatment that the Department recommends, even if:

(1) The defendant did not timely file a motion for reconsideration under Maryland Rule 4-345; or

(2) The defendant timely filed a motion for reconsideration under Maryland Rule 4-345 which was denied by the court.

(b) *Prerequisites.*—Before a court commits a defendant to the Department under this section, the court shall:

(1) Offer the defendant the opportunity to receive treatment;

(2) Obtain the written consent of the defendant:

(i) To receive treatment; and

(ii) To have information reported back to the court;

(3) Order an evaluation of the defendant under § 8-505 or § 8-506 of this subtitle;

(4) Consider the report on the defendant's evaluation; and

(5) Find that the treatment that the Department recommends to be appropriate and necessary.

(c) *Reports of defendant's records.*—Immediately on receiving an order for treatment under this section, the Department shall order a report of all pending cases, warrants, and detainers for the defendant and forward a copy of the report to the court, the defendant, and the defendant's last attorney of record.

(d) *Services.*—

(1) The Department shall provide the services required by this section.

(2) A designee of the Department may carry out any of the Department's duties under this section if appropriate funding is provided.

(e) *Admission to facility.*—

(1) *A court may not order that the defendant be delivered for treatment until:*

(i) The Department gives the court notice that an appropriate treatment program is able to begin treatment of the defendant;

(ii) Any detainer based on an untried indictment, information, warrant, or complaint for the defendant has been removed; and

(iii) *Any sentence of incarceration for the defendant is no longer in effect.*

(Emphasis added.)

Prior to the October 1, 2006 amendment, section 8–507(a) provided "[t]his section applies only to a defendant for whom: (1) no sentence of incarceration is currently in effect; and (2) no detainer is currently lodged." *See* Md.Code (1982, 2005 Repl.Vol.). The General Assembly has stated that the purpose of the 2006 amendment of H.G. § 8–507 was:

*For the purpose of removing a limitation that a certain commitment made by a court for treatment for a defendant with an alcohol or drug dependency applies only to certain defendants for whom no sentence of incarceration is currently in effect or detainer is currently lodged:* requiring that the Department of Health and Mental Hygiene, on receiving an order to treat a defendant with an alcohol or drug dependency, order a certain report of pending cases, warrants, and detainers of the defendant; requiring the Department to forward a copy of the report to the court that committed the defendant, the defendant [sic], and the defendant's last attorney of record; providing that a court may not order a defendant delivered to the Department for treatment until any detainer based on an untried indictment, information, warrant, or complaint is removed and any **sentence of incarceration is no longer in effect;** and generally relating to commitment procedures for defendants with an alcohol or drug dependency.

Chapter 338, Law of 2006 (emphasis added).

It is difficult to see how at least one part of the General Assembly's legislative purpose was fulfilled by the 2006 amendment. After all, the statute as amended, like its imme-

diate predecessor, stated that a court could not order a defendant to be delivered for treatment until any sentence of incarceration for the defendant was no longer in effect.

The State contends that unless the provisions of Md. Rule 4–345 are complied with, the court has no power to suspend a sentence or modify it in any way. This argument would be persuasive, were it not for the fact that H.G. § 8–507 allows the circuit court to order drug treatment even if the defendant did not file a motion for reconsideration within 90 days (the time limit set forth in Md. Rule 4–345), and may also order commitment even if a defendant filed a timely motion for reconsideration that had previously been denied. A statute trumps a Rule if the statute is, as here, enacted after the rule. *James v. Butler*, 378 Md. 683, 692, 838 A.2d 1180 (2003).

Section 8–507(a), as currently written, allows the court to commit the defendant to drug treatment as a condition of his release after conviction *or at any other time.* That provision, when read in tandem with the sub-section of section 8–507 prohibiting a court from ordering a defendant into drug or alcohol treatment until any sentence of incarceration for that defendant is no longer in effect, leads us to conclude that the court may utilize the powers set forth in 8–507 by suspending the sentence even if the provisions of Md. Rule 4–345 are not met.

Aside from its argument based on Rule 4–345, the State also maintains that section 8–507 means that once a defendant is sentenced and a motion for reconsideration is denied, the defendant must complete his or her sentence before the defendant becomes eligible for the drug treatment contemplated in H.G. Article § 8–505 and 8–507. The only authority provided to us by the State in support of this argument is *Fuller v. State,* 397 Md. 372, 918 A.2d 453 (2007).

The State says, in a footnote found in its brief:

[T]he Court of Appeals ruled [in *Fuller* ] that a court may, at any time, order a defendant for treatment under Section 8–507, as long as the defendant agrees to participate in treatment. *Id.* at 389, 918 A.2d 453. Yet, the statute then

and now provides: "A court may not order that the defendant be delivered for treatment until .... (ii) Any detainer based on an untried indictment, information, warrant, or complaint for the defendant has been removed; and (iii) Any sentence of incarceration for the defendant is no longer in effect." *Id.* at 377 n. 1, 918 A.2d 453; *see* Health Gen. Art., § 8–507(e). The [*Fuller*] Court did not address how a court may order treatment when a sentence of incarceration is still in effect, as was the sentence here. The State contends that a court's authority over the sentence is limited by Maryland Rule 4–345 and that, but for the authority conferred by Rule 4–345, a court does not have authority over a sentence, whether to stay or modify it.

Later, in the body of its brief, the State argues that the *Fuller* Court "concluded" that a motion for modification and a petition for treatment were not comparable. 397 Md. at 395, 918 A.2d 453. The State then quotes *Fuller* as follows:

Unlike a motion for modification, a petition for commitment does not affect the length of a sentence, only where a portion of it is to be served. It also initiates a statutory cause of action separate from the conviction, and may be filed repeatedly "at any other time the defendant voluntarily agrees to participate in treatment."

397 Md. at 389, 918 A.2d 453.

The State's argument is not persuasive. First, as the Court of Appeals pointed out in *Hoile,* 404 Md. at 615–16, n. 22, 948 A.2d 30, the two sentences found in *Fuller* (just quoted) were merely "dicta" and were "only included in [the *Fuller* opinion] for [the] purpose of comparison and was of little actual value in determining the outcome of that case." Aside from being dicta, the first sentence of the *Fuller* case relied upon by the State is ambiguous insofar as it states that "a petition for commitment [for drug or alcohol treatment] does not affect the length of a sentence, only where a portion of it is to be served." It is unclear whether the words "does not affect the length of a sentence" means the executed portion of the

sentence or the entire sentence, which, of course, would include the suspended portion.

We construe the statement set forth in *Fuller* as meaning that the length of the sentence, including the suspended part, is not affected by the filing of a petition for commitment. This is made clear by the case of *State v. Thompson,* 332 Md. 1, 629 A.2d 731 (1993). William Thompson, a repeat drug offender, was convicted of drug offenses in the Circuit Court for Baltimore County. The statute Thompson violated required that ten years of the sentence imposed be without the possibility of parole. *Id.* at 4, 629 A.2d 731. For the crimes of conspiracy to violate the controlled dangerous substance laws and conspiracy to distribute cocaine, the sentencing court imposed concurrent sentences of fifteen years incarceration on each count, ten years of which were to be served without the possibility of parole. *Id.* at 3, 629 A.2d 731. The balance of the sentences were suspended and Thompson was placed on five years probation. As a condition of release, however, Thompson was committed to Second Genesis.[6] *Id.* The probation order required that Thompson, upon release, submit to periodic urinalysis at the Department of Parole and Probation. *Id.*

At Thompson's sentencing, the State argued that the defendant, if he were committed for treatment, should be remanded to the Department of Corrections to serve the balance of his mandatory minimum sentence even if he successfully completed the drug program. *Id.* The State maintained that section 8–507 "does not allow [the sentencing judge] to avoid the ten years without parole" provision of the statute. The circuit court rejected that argument and the State appealed. The Court of Appeals said:

> [G]iven the history of drug rehabilitation legislation, the failure of section 8–507 to provide that pending criminal

---

**6.** When *Thompson* was decided, H.G., Art. § 8–507 did not contain any provision prohibiting a court from sending a defendant to drug or alcohol treatment if any sentence of incarceration against the defendant was still in effect. Therefore, it was not then necessary to suspend a sentence prior to a section 8–507 commitment.

proceedings are terminated when a defendant has successfully completed a treatment program, *i.e.,* been declared rehabilitated, or that such proceedings are to be resumed when the defendant has not, does not support the State's argument that remand for service of the balance of the sentence was mandatory. Had the Legislature intended a defendant who successfully completed a treatment program to serve the remainder of the mandatory sentence, it certainly would have expressly so provided, as it did in the case of a defendant who withdraws his consent, *see* § 8–507(f), or as it had done, in the case of unsuccessful defendants, in the prior legislation.

We note that our holding is harmonious with the well established principle that "a sentencing judge in a criminal proceeding is 'vested with virtually boundless discretion,'" *State v. Dopkowski,* 325 Md. 671, 679, 602 A.2d 1185, 1189 (1992), quoting *Logan v. State,* 289 Md. 460, 480, 425 A.2d 632, 643 (1981)' *Brown v. State,* 80 Md.App. 187, 198, 560 A.2d 605, 610 (1989); *Johnson v. State,* 75 Md.App. 621, 640, 542 A.2d 429, 438 (1988), *cert. denied,* 316 Md. 675, 561 A.2d 215 (1989), provided the "sentence . . . [does not] violate any constitutional requirements such as the prohibition against cruel and unusual punishment; the sentencing judge . . . [is not] motivated by prejudice, ill-will or any other impermissible considerations; and the sentence itself . . . [does not] exceed any limitation set by statute." *Smith v. State,* 308 Md. 162, 169–70, 517 A.2d 1081, 1085 (1986). *See also Teasley v. State,* 298 Md. 364, 370, 470 A.2d 337, 340 (1984); *Kaylor v. State,* 285 Md. 66, 69, 400 A.2d 419, 421 (1979). The trial judge, having observed the defendant before and after treatment, will be in the position to determine whether society's interest would be better served if that defendant, upon completion of treatment, is returned to prison or released.

332 Md. at 19–20, 629 A.2d 731.

As noted, Howsare contends that if a person, presently incarcerated, files a petition for drug treatment under H.G.

Art., § 8–507, the only way the court can order treatment is if the court suspends the executed portion of the sentence. We agree with appellant as to this point because when the entire sentence of incarceration is suspended, the sentence is no longer in effect and therefore the requirements of H.G. Art., § 8–507(e)(1)(iii) are met.

Judge Nalley did not suspend Howsare's sentence, nor did he intend to do so. Instead, Judge Nalley, on January 31, 2007, "stayed" the sentence so that Howsare could complete the Second Genesis drug program. Howsare contends that when the court stayed the sentence, he imposed an illegal modification of the sentence. The State agrees with Howsare as to this point. We too agree.

Even assuming that a sentence that has been stayed can be construed as one "no longer in effect," the court would still have no power to stay appellant's sentence on January 31, 2007, more than five years after the original sentence was imposed. *See Montgomery v. State*, 405 Md. 67, 950 A.2d 77 (2008).

In *Montgomery*, the defendant was convicted of violating the conditions of a previously imposed period of probation. *Id.* at 68, 950 A.2d 77. The Circuit Court for Charles County sentenced Montgomery to ten years imprisonment for the violation, with no new period of probation involved. The court then deferred for three years the date when Montgomery was to report to the Division of Corrections to begin serving his sentence. *Id.* at 68–9, 950 A.2d 77. The reason given by the judge for the deferral was that "if you [Montgomery] are of good behavior between now and three years from now I will reconsider it and vacate it and not make you serve another day." *Id.* at 69, 950 A.2d 77. The issue presented in *Montgomery* was whether the deferred reporting date was authorized by Maryland Rule 4–348(d).

Md. Rule 4–348 reads:

**Rule 4–348. Stay of execution of sentence.**

(a) **Sentence of death.** (1) Definition. In this section, "states post conviction review process" has the meaning stated in Code, Correctional Services Article, § 3–902.

(2) A sentence of death shall be stayed during the direct review process and the state post conviction review process.

(b) **Sentence of imprisonment.** The filing of an appeal or a petition for writ of certiorari in any appellate court, including the Supreme Court of the United States, stays a sentence of imprisonment during any period that the defendant is released pursuant to Rule 4–349, unless a court orders otherwise pursuant to section (d) of that Rule.

(c) **Fine.** Upon the filing of an appeal or petition of writ of certiorari in any appellate court, a sentence to pay a fine or a fine and costs may be stayed by the court upon terms the court deems proper, but any bond required to stay the payment pending appeal may not exceed the unpaid amount of the fine and costs, if any.

(d) **Other sentences.** *Any other sentence or any order or condition of probation may be stayed upon terms the court deems proper.*

(Emphasis added.)

The *Montgomery* Court held that the purpose of section (d) of Rule 4–348 was "to authorize a judge to defer a convicted defendant's prison reporting date so the defendant could take care of his or her 'personal, financial, or other commitments, such as winding up business affairs, making arrangements for the care of children or other dependents, etc.'" In the words of the *Montgomery* Court, the purpose "was not to allow a trial judge to monitor the defendant's behavior for several years." The *Montgomery* Court then reached the following conclusion, 405 Md. at 81, 950 A.2d 77:

If a trial judge decides that a convicted defendant's behavior should be monitored or controlled, and that a period of good behavior should result in reduced time or no time in prison, the judge may proceed under the statutes and rules relating to suspension and probation. *See* Mary-

land Code (2001), §§ 6–219 through 6–226 of the Criminal Procedure Article; Maryland Rules 4–346 and 4–347. The trial judge in the present case, however, did not proceed under these provisions and did not place the defendant on probation.

Since the trial judge's action was not authorized by Rule 4–348(d), the sentence imposed was illegal.

After having argued persuasively in his brief that the court had no power to "stay" the sentence, and that the sentence imposed was illegal, appellant's counsel makes a logical "U" turn and next argues that, in reality, what the court did in this case, by its order dated January 31, 2007, was to suspend the sentence. In his brief, appellant phrases his argument as follows:

> The result of what occurred, without regard to the terms used by the court, was that the Appellant[']s term of incarceration was suspended, while he was committed to the Department of Health and Mental Hygiene. Amended Commitments also reflect this reality.

■ Building upon the premise that Judge Nalley suspended his sentence when he committed him to the Department of Health and Mental Hygiene, appellant further argues, citing *State v. Thompson, supra,* 332 Md. 1, 629 A.2d 731 (1993) that because the sentence was suspended the proper procedure was to have him brought back to the circuit court after he successfully completed the Second Genesis program and at that time hold a hearing. At the hearing, the circuit court should have, but did not, exercise its discretion and decide whether to send appellant back to prison. In the exercise of that discretion the court would have been required to give weight to the fact that drug treatment had been successfully completed.

We disagree with appellant's premise that the court, on January 31, 2007, in effect, suspended the balance of appellant's sentence. First, Judge Nalley, a circuit court judge for more than twenty years, quite obviously knew the difference between suspending a sentence and staying one. And, as

already mentioned, at the hearing on October 31, 2006, Judge Nalley said "We will stay . . . we will not suspend . . . but stay the execution of the fourteen-years, sixty-seven day balance of the active sentence in this case in Count II. . . ." Judge Nalley also made it clear that he intended to stay the sentence when he signed his January 31, 2000 order, stating that the executed portion of the sentence was "stayed."[7] Second, contrary to appellant's argument, no commitment filed in this case "reflect[ed][the] reality" that defendant's sentence was suspended.

■ Moreover, even if Judge Nalley had wanted to suspend appellant's sentence on January 31, 2007, under the peculiar circumstances of this case, the court could not have unilaterally done so. We say this because the record shows that, as of January 31, 2007, appellant was serving an eight year sentence in St. Mary's County, which was to run concurrently with the sentence imposed in the subject case. Under the provision H.G. Art., § 8–507(e)(1)(iii), the Circuit Court for Charles County could not suspend appellant's sentence and send appellant to Second Genesis unless the St. Mary's County Circuit Court also suspended appellant's sentence. Here, the Circuit Court for St. Mary's County never suspended appellant's sentence. Instead, as shown by the January 31, 2007 order, the Circuit Court for St. Mary's County merely agreed that the sentence of that court would not act as a detainer on the defendant. Because the trial judge did not suspend any portion of the twenty year sentence imposed as to Count II, nor did Judge Nalley make the successful completion of the Second Genesis program a condition of his release,

---

7. Judge Nalley had good reason to be reluctant, as of January 31, 2007, to suspend the unserved portion of appellant's sentence. If he had suspended the sentence, the judge, in all likelihood, would have wanted to impose conditions on the suspension, such as completion of the Second Genesis treatment program, obey all laws, etc. A court could not later revoke a suspension unless the defendant violated one or more of the conditions imposed. In practical effect a suspended sentence would have guaranteed Howsare that he would no longer face incarceration if he simply met all conditions imposed.

appellant was not entitled (once he completed Second Genesis) to the type of hearing discussed in *State v. Thompson.*

■ It should be noted that when the court stayed appellant's sentence on January 31, 2007, that amounted to a new sentence. *See Pitts v. State,* 155 Md.App. 346, 351–52, 843 A.2d 212 (2004). The imposition of a new sentence entitled appellant to file a motion for modification of the new sentence within 90 days. *See* Md. Rule 4–345. Appellant's counsel filed such a motion on February 12, 2007, and was thereafter granted a hearing. In sum, appellant received exactly what he bargained for.

■ Appellant contends that if we rule that he was only entitled to a hearing to determine if modification of sentence was warranted (pursuant to Md. Rule 4–345) we will reach an "unjust result." He argues:

The abuse of discretion that occurred in this case was the Court absolutely did not consider or concern itself with the Appellant['s] circumstances as it [sic] existed on his return to Court in May of 2008. The Court did not consider his successful completion of this commitment under H.G. Article 8–507. It did not consider his absolute compliance with his probation that had been in effective under the "stayed" sentence since January 2007. It did not consider his re-employed while under out patient care following his residential care and his subsequent opening of his own business, his obtainment of business licenses and insurance, his acquisition of work equipment and vehicles and his employment of others. It did not consider his reunification with his children. It did not consider its own order of January 3[1], 2007 which required a discharge recommendation and failed to either receive or consider any such recommendations. Instead, rather than observing the defendant before and after treatment, the Court simply applied the sole criteria of the nature of the offense and retribution. Issues that had been decided in August of 2001 when the Appellant was first sentenced. If that was to be [the] sole criteria then the "deal" made by the Court for Appellant's withdrawal with

prejudice of his Petition of Post Conviction was a sham. If that was to be the sole criteria, then the October 31, 2006 H.G. Article 8–507 hearing was an exercise in futility or an abuse of the purpose and intent of the statute.

Appellant further argues:

It must also be repeated that this end result occurred based upon a "deal" made with the Circuit Court whereby he surrendered a colorable post conviction claim that may have resulted in a new trial. Section 7–104 of the Criminal Procedure Article states:

> [t]he court may reopen a post conviction proceeding that was previously concluded if the court determines that the action is in the interests of justice. Maryland Code (2001), Criminal Procedure Article, § 7–104[.]

At the very least, given the end result that has occurred in this case it is unjust to have required the Appellant to have surrendered his post conviction rights and having done so that must be considered when determining whether Appellant's ultimate dispositions constitutes cruel and unusual punishment and if not make it clear that those rights may be reinstated to him should he re-file his petition.

The State makes the following response:

This claim should be rejected for two reasons. Howsare voluntarily agreed to withdraw his petition for post-conviction relief with prejudice. He did so knowingly and voluntarily and with the advice of counsel. Further, Howsare received the benefit of the "deal" in that he was evaluated for treatment and was committed for treatment in an alcohol and drug program. There were never any promises made that his sentence would be suspended or reduced in exchange for the withdrawal of the petition for post-conviction relief. There is no basis for allowing Howsare to reopen his claim for post-conviction relief and, in any event, any request to re-open is properly made in the circuit court.

We do not agree with appellant that Judge Nalley did not consider appellant's successful completion of Second Genesis or the other commendable deeds performed by appellant after

he was released from inpatient drug treatment. All those good works were mentioned by appellant's counsel at the May 9, 2008 hearing and Judge Nalley specifically stated that "he agreed with everything [defense counsel] said on [Howsare's] behalf." The court then weighed appellant's good deeds and rehabilitation efforts against the punishment that should be imposed as a result of appellant's conviction for a very serious sex offense.

While Judge Nalley's ultimate decision was no doubt disappointing, appellant knew at the time he agreed to dismiss his post-conviction claim that the court was not making him any promises. He did not receive an "unjust" result. Moreover, there is simply nothing in the record to support appellant's assertion that the court's failure to modify the original sentence, which was within the Maryland sentencing guidelines, amounted to "cruel and unusual" punishment.

### III

Appellant contends that Judge Nalley imposed an "illegal sentence" that may be corrected at any time. According to appellant, the illegal sentence was imposed on January 31, 2007, when the court stayed the original sentence. Appellant maintains, for the reasons already discussed, that the court had no right to "stay" a sentence more than five years after it was originally imposed. For the reasons discussed in Part II, *supra*, we agree that the "stay" was illegal. But whether the order to stay was illegal or not is now moot, because we cannot correct the illegality by "turning back the clock." Appellant is now back in prison after spending about eleven months outside prison walls as a consequence of the illegal "stay" order.[8]

---

8. Appellant provides no suggestion in his brief as to how we could now correct the illegal sentence. At oral argument, however, appellant suggested that we could remedy the matter by treating the order to stay as if the court had ordered, on January 31, 2007, that the original sentence be suspended. We cannot do this even if we believed a suspension was justified. As explained in Part II above, the circuit court had no power to suspend the sentence and send the defendant to

## IV

## The Commitment

Appellant also contends that the sentence imposed on May 9, 2008, was illegal. To understand this argument, some mathematical calculations are necessary. It is also necessary to recount exactly what Judge Nalley said at sentencing and what was done by both Judge Nalley and the Clerk's Office after May 9, 2008.

At the May 9, 2008 hearing, Judge Nalley calculated that as of June 27, 2007, the date appellant was released to Second Genesis, he had 14 years and 67 days remaining on his 20 year sentence. In other words, he gave appellant credit for having served 5 years and 298 days (365–67=298). The court next said that appellant was entitled to an additional 204 days for the period he had spent in Second Genesis. This meant that, as of May 9, 2008, appellant had 13 years 228 days left to serve (204–67 = 137; 365–137= 228). That calculation was wrong in two respects. Between February 5, 2001 (appellant's original start date) and June 27, 2007, appellant had spent 2,333 days in prison[9] or 6 years and 142 days. Second, appellant was entitled to 217 days credit (the time between June 27, 2007 and January 30, 2008) due to his stay in the Second Genesis facility. Therefore, correctly calculated, as of May 9, 2008, Howsare was entitled to 6 years and 359 days credit for time served and therefore had 13 years and 7 days left on his sentence.

On May 20, 2008, appellant wrote to the Clerk of the Court to complain about the fact that he had not been given enough credit for time served. In his letter to the Clerk of Court, Mr. Howsare said, in material part, that he left the Department of Corrections

---

drug treatment without similar suspension of appellant's eight year sentence by the Circuit Court for St. Mary's County. *See* H.G. Article § 8–507(e)(1)(iii).

9. 2004 had 366 days because it was a leap year.

... on June 27, 2007, to go to Second Genesis [and] went back to court on 5–9–08[.] Judge Nalley gave me back the 20 years with 6 years 271 days credit. That is not right. 6–27–2007 to 5–9–08 is 331 days credit.[10] Judge credited me 6 years [sic]. It should be 6 years 20 days from 2–6–2001[sic] to June 27, 2007 with the 331 good days should give me a total of 7 years 10 days as of 5–9–08.

Mr. Howsare's calculations assume—incorrectly—that he should have been given credit for the time between the date he was released from Second Genesis [January 30, 2008] until the time he returned to court [May 9, 2008].

On June 10, 2008, one day after the appeal in this case was noted, an amended commitment was filed by the Clerk of the Court for Charles County. That commitment had a start date of July 24, 2001 and gave appellant credit for 2,481 days (6 years 290 days) time served. It is not clear how the Clerk arrived at the July 24, 2001 start date.

On June 20, 2008, Judge Nalley filed a memorandum and order that instructed the Clerk to give appellant 217 days credit for time served while in Second Genesis. The court order read:

ORDERED that as of May 9, 2008 ..., the Defendant Howsare is accorded credit for 6 years 360 days against the 20 year sentence. The Clerk is directed to issue a revised commitment consistent herewith.

The amended commitment was filed by the Clerk on June 27, 2008. That commitment stated that the start date of appellant's sentence should be May 16, 2001–not February 5, 2001, as in the original commitment. The reason that the begin date was May 16, 2001 is because that date is 6 years and 360 days prior to May 9, 2008 (2004 and 2008 were leap years with 366 days).

Appellant argues that the first post-May 9, 2008, commitment was:

---

**10.** 317 days separate June 27, 2007 and May 9, 2008, not 331.

Flawed because it constitutes a new sentence and it misconstrues the credit due to the Appellant for the actual days he served or was due credit for serving against his original sentence. First, by the manner in which this court preceeded, the Appellant is left with the loss of all accumulated time for good conduct. Secondly ... the court misconstrued his actual days of incarceration.

Nothing in the record shows that Howsare's "accumulated time for good conduct" was reduced. Appellant argues otherwise, relying on the letter he wrote to the Clerk of Court dated May 20, 2008. He argues that the May 20th letter alerted Judge Nalley to the fact that Howsare "had lost ... 331 days of good credit." Appellant goes on to argue that "it is known that" inmates receive and by law are entitled to good behavior credits yet no [ ] effort to factor this into the recommitment was made by the court. This argument is very difficult to understand. For starters, appellant never "alerted" the court that he was losing good behavior credits. He complained, in his letter of May 20, 2008, only that he had not been given credit for the period between the date he entered Second Genesis and the date he returned to court on May 9, 2008, which he calculated (incorrectly) as 331 days.

■■ Appellant says in his brief that "there is an issue as to whether Appellant is entitled to credit for the additional time he remained under treatment after the inpatient portion of his DHMH commitment, while he was in the community in his after-care portion of his treatment...." H.G. Art., § 8–507(n) provides:

(n) *Credit against sentence.*—Time during which a defendant is held under *this section for inpatient evaluation* or *inpatient or residential treatment* shall be credited against any sentence imposed by the court that ordered the evaluation or treatment.

Nothing in the statute allows the court to give credit for the time appellant spent in the community after he had successfully completed Second Genesis. During that period he was

obviously not being held for "inpatient evaluation" or "inpatient treatment" or "residential treatment."

Appellant is correct, however, when he complains that the original commitment, dated June 10, 2008, miscounted his actual days of incarceration and sets forth an incorrect start date as appears on the June 10, 2008 commitment. Nevertheless, as already mentioned, that commitment has been superseded by the commitment date of June 27, 2008.

■ Appellant lastly complains that under the present commitment, he received a credit of 2,550 days (6 years 360 days) on his 20 year sentence, with a start date of May 16, 2001. According to appellant this represents a loss of 99 days from the original start date of February 5, 2001. The argument that he was entitled to a February 5, 2001 start date overlooked the fact that appellant was not, as already explained, entitled to credit for the period when he was "on the street" establishing his business, obtaining a business license, etc. This being said, however, the commitment does contain one error that might prejudice appellant. The commitment states, on the second page, that "as of 6/20/08" the defendant "is accorded credit for 6 years, 359 days against the 20 year sentence...." The commitment should read that the defendant is entitled to credit for 6 years and 360 days against the 20 year sentence *as of May 9, 2008*. But an error of this sort "does not invalidate imprisonment after conviction" or amount to an "illegal sentence." *See* Md. Rule 4–351(b). Howsare's proper remedy is to file a motion to correct the commitment order.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**