32 A.3d 1076

**Roslyn BROADWAY**

v.

**STATE of Maryland.**

**No. 393, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Dec. 5, 2011.

Brian M. Saccenti (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for appellant.

Mary Ann Ince (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

EYLER, DEBORAH S., HOTTEN, JAMES P. SALMON, (Retired Specially Assigned), JJ.

JAMES P. SALMON, J. (Retired Specially Assigned).

This case deals with Maryland Rule 4–267, which governs the rights of witnesses who are arrested based on a body attachment. The appellant, Roslyn Broadway, was arrested and jailed pursuant to a body attachment order issued by the Circuit Court for Baltimore City. She contends in this appeal, *inter alia*, that the body attachment order should never have been signed, and that after it was signed she was treated unjustly. For reasons set forth below, we agree with those contentions.

## I.

On May 29, 2010, Devon Dorsey was fatally shot. Roslyn Broadway (date of birth: 8/21/91) was a witness to the shooting. Shawn Jones, Bobby Williams, and Darius White were charged in the Circuit Court for Baltimore City with Dorsey's murder. The defendants were indicted individually for the murder (and related crimes), but the cases were later consolidated for trial.

The trial in the murder cases was initially set for November 1, 2010, but then continued until March 15, 2011. With the consent of the prosecutor and defense attorneys, a new trial was set for May 2, 2011, but since that date the cases have been continued three times and are now set for trial on December 26, 2011.

Meanwhile, on February 23, 2011, the prosecutor in the murder cases filed an "application for warrant for material witness" in each of the criminal files. In its application, the State requested that Ms. Broadway be arrested and taken into custody as a material witness. The application, which was signed by a Baltimore City Assistant State's Attorney, read, in material part, as follows:

Ms. Roslyn Broadway is an identifying witness in this case. On several occasions, efforts have been made to contact Ms.

Broadway to speak with her about the case, to no avail. During the week of August 9, 2010, Ms. Broadway was asked to meet with me in my office. Ms. Broadway did not respond to those requests. On August 17, 2010, Det. Ross responded to Ms. Broadway's home on two occasions, with no response at the door. The Detective then went to Ms. Broadway's work but was unable to get in contact with her. On August 18, 2010, the Detective spoke with Ms. Broadway and notified her that her presence would be needed in court on the [November 1, 2010] trial date. Ms. Broadway became very upset during that conversation and prematurely terminated the call. Further attempts to contact Ms. Broadway in reference to this case were made on August 21–22, September 2–3, 2010. *Two summonses were left at Ms. Broadway's home on September 3, 2010. The summonses were to appear in my office on October 7, 2010 and to appear for trial on November 1, 2010.* Ms. Broadway did not appear on either date.

On December 17, 2010, Ms. Broadway called Det. Ross and advised him that she had been threatened over this court proceeding. Det. Ross set up an appointment to meet with Ms. Broadway on Monday, December 20, 2010. Ms. Broadway failed to appear at the designated meeting location.

On January 7, 2011 and January 12, 2011, letters were mailed to Ms. Broadway in an attempt to make contact with her. The letter on January 12 was sent with a summons to appear in my office on January 20, 2011 and to contact me if Ms. Broadway is unable to appear. Ms. Broadway called my office on January 20, but did not speak with me. Ms. Broadway did not leave a number where she could be reached but indicated she would call back. Ms. Broadway did not call back nor did she appear in my office.

Given that Ms. Broadway has failed to appear for one trial date, has been unwilling to speak with me over the phone or meet with me in my office, even when summonsed to do so, the State believes that the only way to secure Ms. Broadway's presence is by way of a body attachment. Mr.

(sic) Broadway is a material witness, she is over 18 years of age, and her testimony is necessary for the case.

(Emphasis added.)

The same day that the State filed its application, a Baltimore City Circuit Court judge issued an order for body attachment stating that Ms. Broadway "be arrested and taken into custody as a material witness to be held without bond pending a hearing to be scheduled within three days of her arrest, at which time the court will decide whether continuing detention is warranted."

On March 14, 2011, Ms. Broadway was arrested and jailed based on the February 23rd body attachment order. Three days later, on March 17, 2011, Ms. Broadway appeared, without counsel, before the circuit court judge who signed the body attachment.

At the hearing, the prosecutor, in substance, reiterated what she had said in the application for a body attachment. The prosecutor also said that she had spoken with Ms. Broadway and that Ms. Broadway now

seems to be of the understanding, although I'd ask the Court to address her, that she understands that she has to come to Court. She does not want to, but that she has to. I believe that she understands that, but I'd ask the Court to address her. But it's the State's understanding that she has no prior convictions.

Valerie Robinson, a representative of the Court's Pretrial Services Division, told the court that Ms. Broadway had no adult convictions and "no failure[s] to appear on record." Ms. Broadway did, however, have a second-degree assault case pending in the District Court. Ms. Robinson also advised that her investigation showed that Ms. Broadway was in the eleventh grade at Patterson Senior High School, and lived at 2731 Ashland Avenue with her sister, but had only lived at that address for seven days. Prior to moving to the Ashland Avenue address, Ms. Broadway had lived with her sister for one and one-half years at 837 North Montford Avenue in Baltimore City.

Ms. Broadway told the court, in no uncertain terms, that she did not like the way that she had been treated by the prosecutor and thought that it was not fair that she had been arrested and kept in jail for three days. The court asked Ms. Broadway what assurances she could give the court that she would appear for trial. In response, Ms. Broadway, although she said that she would come to court for trial ("don't worry, I'll be there"), also stated that she did not understand why her presence in court was needed.

The court next asked the prosecutor what disposition she recommended. The prosecutor said she would submit, but added, "the State would say that if your Honor is inclined to grant a bail (sic) that she's able to [meet], that she be under the supervision of pretrial services."

The Court ruled as follows:

THE COURT:—Ms. Broadway. And, it also appears to the court, given the evidence presented today, as well as the Defendant[,] her demeanor, the answer to the questions [1] as well as her prior actions, she is definitely a threat to fail to appear. The court is not confident that she will appear at the May 26, 2011 hearing. Therefore, bail will be no bail. And perhaps the bail will be reviewed at some point when Ms. Broadway understands exactly that this is not a joke.[2]

On April 1, 2011, after Ms. Broadway had been incarcerated for seventeen days, an assistant public defender learned of her plight. He immediately filed a petition for a *writ of habeas corpus.* Five days later, on April 6, 2011, the circuit court judge who had signed the body attachment order convened a hearing to review Ms. Broadway's status. Ms. Broadway was represented at the hearing by a public defender, who argued that the body attachment should be dismissed because it was

---

1. Our review of the record does not reveal a single question that Ms. Broadway answered in a rude or inappropriate manner.

2. Ms. Broadway never said that she thought that the proceedings "were a joke" nor did Ms. Broadway make any statement that indicated that she harbored such a thought.

illegally issued in the first place due to the State's failure to comply with the dictates of Maryland Rule 4–267. Despite that argument, the court did not address the issue of whether the body attachment should be dismissed. Instead, the court issued a summons,[3] requiring Ms. Broadway to appear for trial on May 26, 2011. That summons was served on appellant in open court. The court then released Ms. Broadway on her own recognizance, but placed her under the supervision of the court's Pretrial Services Division. The terms of the pretrial supervision were then explained to Ms. Broadway by Valerie Robinson—albeit not on the record.

In this appeal, Ms. Broadway raises two issues, which we have reordered: viz

1. Did the circuit court err in issuing a body attachment for a witness, detaining her, and placing her under the supervision of a State agency where (a) the State's application for a body attachment was not verified and did not contain the witness's address or "[a] summary of the information or testimony of which the moving party believes the witness has knowledge," and (b) there was no evidence that the witness was personally served with a valid subpoena and failed to comply, or that she would have refused to comply with a properly served, valid subpoena?

2. Does a witness in a criminal case have a right to counsel at a hearing to determine whether she should be detained pending trial?

---

**3.** A "summons" is "a writ notifying the person named in the summons that (1) an action against that person has been commenced in the court from which the summons is issued and (2) in a civil action, failure to answer the complaint may result in entry of judgment against that person and, in a criminal action, failure to attend may result in issuance of a warrant for that person's arrest." Md. Rule 1–202(aa). As the Maryland Rules makes clear, a "summons" is a writ directed to a defendant, not to a witness, such as appellant. *See id.;* Md. Rule 4–212(b) & (c) (2011). A subpoena is the form of process that can be used to compel a witness to appear as a witness at a criminal trial, *see* Md. Rule 1–202(z) (defining "subpoena" as "a written order or writ directed to a person and requiring attendance at a particular time and place to take the action specified therein").

The State has filed a motion to dismiss the appeal, on two grounds viz: 1) this Court has no jurisdiction to hear the appeal, and 2) all issues raised are moot.

## II.

Maryland Rule 4–267 reads, in pertinent part, as follows:

(b) **By order of court.** Upon application filed by a party in accordance with this Rule, the court may order the issuance of a body attachment of a witness and require the witness to post a bond in an amount fixed by the court to ensure attendance if the court is satisfied that (1) the testimony of the witness is material in a criminal proceeding, and (2) it may become impracticable to secure the witness' attendance by subpoena. The sheriff or peace officer shall execute a body attachment by taking the witness into custody and forthwith before a judicial officer in the county where the action is pending or where the witness is taken into custody to post bond. A witness who is unable to post the prescribed bond shall be committed to jail. Within three days after the witness is taken into custody, the court shall hold a hearing with respect to any matter contained in the application or to the conditions of release imposed on the witness.

\*　　\*　　\*

(e) **Content of application.** An application for continued detention under section (a) of this Rule or for a body attachment under section (b) of this Rule *shall be verified* and shall contain the following:

(1) The name and present address of the witness;

(2) The designation of the action for which the testimony of the witness is required;

(3) A summary of the information or testimony of which the moving party believes the witness had knowledge;

(4) The materiality of the expected testimony of the witness;

(5) the reason for requiring a bond or incarceration to ensure the attendance of the witness.

(Emphasis added.)

In several respects the requirements of Rule 4–267 were not met in the subject case. First, Rule 4–267(e) mandates that the application for a body attachment "shall be verified," which means that the application must be supported by an oath or affidavit. *See* BALLENTINE'S LAW DICTIONARY (2010) (defining "verification" in pertinent part as "[a] sworn statement of the truth of the facts stated in an instrument" or "[a] statement under oath by a party who pleads that his pleading is true of his own knowledge or to the best of his knowledge and belief"); BLACK'S LAW DICTIONARY 1561 (6th ed.1990) (defining "verify" in pertinent part as "To confirm or substantiate by oath or affidavit. Particularly used in making formal oath to accounts, petitions, pleadings, and other papers."); *Pacific Mortgage & Inv. Group, Ltd. v. Wienecke,* 50 Md.App. 128, 130, 436 A.2d 499 (1981) (quoting former Md. Rule 5c (providing in pertinent part that "[w]henever under these Rules a pleading or other paper is required to be 'verified,' this means that an affidavit must be made thereto")).

Second, when the circuit court issued the order for a body attachment on February 23, 2011, it did not, as Rule 4–267(b) required, fix a bond.

Third, contrary to Rule 4–267(b), Ms. Broadway was not immediately taken before a commissioner after her arrest. Instead, she was forced to stay in jail for three days without any chance of posting bond.

Fourth, there were insufficient facts set forth in the application to show that it "may become impracticable to secure the witness' attendance by subpoena." *See* Md. Rule 4–267(b). Ms. Broadway had never disobeyed a subpoena for her to appear in court, nor had she even been properly served with any court document requiring her appearance in court.[4]

---

4. The application for a body attachment states that the prosecutor left a "summons" at Ms. Broadway's home on September 3, 2010, requiring

Moreover, Ms. Broadway had no obligation to either talk to detectives, meet with the prosecutor, or obey a "summons" to appear at the State's Attorney's office. *See Kines v. Butterworth*, 669 F.2d 6, 9 (1st Cir.1981) (explaining that "a witness may of his own free will refuse to be interviewed by either the prosecution or the defense"); *United States v. Matlock*, 491 F.2d 504, 506 (6th Cir.1974) (observing that "a witness is free to talk or not unless compelled by order of court"); *accord Kardy v. Shook*, 237 Md. 524, 541, 207 A.2d 83 (1965) (explaining that the ability of the defense to question a State's witness was subject to "witness' acquiescence in such interrogations"). Moreover, as far as can be determined by reviewing the application, at no time had Ms. Broadway given any indication that she would disobey a lawfully issued subpoena.

The State argues:

[B]ased on the court's inquiry and the testimony presented at the proceedings on March 17th and April 6th, it is clear that the circuit court did not err in ascertaining that the prerequisites for the issuance of a body attachment under Rule 4–267(e) were met as to Broadway's status as a material witness. The nature and materiality of the information and testimony the prosecutor proffered that Broadway could provide at trial, as well as evidence of Broadway's

---

her to appear for trial on November 1, 2010. Ms. Broadway had no duty to obey a summons left at her address. If the State wanted Ms. Broadway to appear at trial, it should have issued a subpoena (*see* n.1 *supra*). And, the subpoena should have been served in accordance with Maryland Rule 4–266(b), which reads as follows:

(b) **Service.** A subpoena shall be served by delivering a copy to the person named or to an agent authorized by appointment or by law to receive service for the person named *or as permitted by Rule 2–121(a)(3)*. A subpoena may be served by a sheriff of any county or by a person who is not a party and who is not less than 18 years of age. . . .

(Emphasis added.)

Md. Rule 2–121(a)(3) allows a subpoena to be served by "certified mail requesting restricted delivery-show to whom, date, address or delivery." Simply leaving a subpoena at a person's address is plainly not proper service.

actions in evading the State's prior attempts to secure her presence at trial, fully warranted the circuit court's determination that the factors of rule 4–267(e) were satisfied in connection with Broadways' (sic) status as a material witness.

We reject all of the arguments just quoted. For starters, the circuit court did not "find" that the State had complied with Rule 4–267(e) and, in any event, it would have erred if it had done so. Moreover, the argument that appellant "evad[ed]" the State's attempts to secure appellant's presence at trial is misleading. The State did not even attempt to serve her with a subpoena for the trial scheduled for March 15, 2011; moreover, the State never made any legitimate attempt to properly serve her with a subpoena for the trial scheduled for November 1, 2010. Under such circumstances, there is nothing in the record showing that a body attachment was warranted.

■ The State further argues that the judge correctly concluded on March 17, 2011, that incarceration with no bond was justified based on appellant's "demeanor" and the "responses" appellant made to the court's questions at that hearing. But the State does not point to any response that Ms. Broadway made—and our review of the record has failed to find any—that supports the conclusion that appellant intended not to appear in court. Moreover, the State's brief fails to explain how the appellant's "demeanor" (the record reveals only that appellant was angry about her treatment) could justify a judge's conclusion that appellant intended not to obey a subpoena even though the witness told the court that she would do so. *See Cross v. State,* 144 Md.App. 77, 94, 796 A.2d 145 (2002) (witnesses should be detained "only when absolutely necessary.").

For all the above reasons, we hold that the trial judge erred in failing to grant appellant's motion (made at the April 6, 2011 hearing) to dismiss the body attachment.

### III.

### The State's Motion to Dismiss Appeal

#### A. Mootness

█ The State argues that the issue of whether the trial judge erred in failing to dismiss the body attachment is moot because appellant was released on her own personal recognizance as of April 6, 2011. The issue is not moot because appellant is still subject to supervision by the circuit court's pretrial monitoring program. Presumably, if appellant does not comply with the terms of supervision, the court could detain her again. Such a restriction on appellant's liberty is material. *See Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) ("Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty.").

#### B. Timeliness of Appeal

█ The State argues that appellant's appeal was not timely noted, because, although Ms. Broadway noted her appeal on April 6, 2011, she did not file her appeal within thirty days of February 23, 2011–the date the circuit court signed the Order for a body attachment. This argument is devoid of merit. It is clear that as of February 23rd, the order was not a final judgment under Md.Code (2006 Repl.Vol.), section 12–301 of the Courts and Judicial Proceedings Article ("CJP"), and therefore was not appealable. *See Harris v. State*, 420 Md. 300, 312–15, 22 A.3d 886 (2011) (except for certain statutory exceptions or when non-final orders in civil cases may be appealed pursuant to Md. Rule 2–602(b), or when the requirements of the collateral order doctrine have been met, to be appealable, an order must be final.).

█ Here, Ms. Broadway had not even been *served* with the body attachment until March 14, 2011. No exception to the final judgment requirement set forth in any statute or rule would have allowed Ms. Broadway to appeal the order at any point prior to service. Moreover, the collateral order doctrine

478

is here inapplicable for several reasons, including the fact that prior to the March 17th hearing, no issue was "conclusively determined." *Jackson v. State*, 358 Md. 259, 266–67, 747 A.2d 1199 (2000). Thus Broadway's appeal, filed on April 6, 2011, was timely under Rule 8–202(a) (providing that, generally, a notice of appeal shall be filed within 30 days after entry of an order being appealed).

■■■ The State argues, in the alternative, that this appeal should be dismissed because it does "not appear [that appellant has] a right to appeal in this case." In support of that argument the State maintains:

"In Maryland, the right to seek appellate review is statutory; the Legislature can provide for, or preclude, the right of appeal." *Fuller v. State*, 397 Md. 372, 382 [918 A.2d 453] (2007), quoting, *inter alia, State v. Manck*, 385 Md. 581, 596 [870 A.2d 196] (2005); *State v. Green*, 367 Md. 61, 77 [785 A.2d 1275] (2001). *Accord Arrington v. State*, 411 Md. 524, 558 [983 A.2d 1071] (2009) (recognizing that Court's ability to entertain an appeal must be legislatively granted). In *Fuller*, the Court of Appeals addressed whether an order denying a criminal defendant the statutory right to seek commitment to a drug treatment program under § 7–102 of the Criminal Procedure Article was appealable. *See* MD. Code Ann., Crim. Pro. Art., § 7–102 (2011). The Court ruled that such an order is not appealable. *Fuller*, 397 Md. at 395 [918 A.2d 453]. Specifically, the Court held that the Legislature had not conferred the right of appeal under the statute and that a ruling denying relief under the provision was not appealable under the collateral order doctrine. *See id.* at 382–95 [918 A.2d 453]. As with the drug referral provision addressed in *Fuller*, the circuit court's order under Rule 4–267, likewise, "does not include any provision regarding appealability." *Fuller*, 397 Md. at 382–83 [918 A.2d 453].

CJP section 12–301 provides, insofar as here relevant:

[A] party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal

exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case that right of appeal is expressly denied by law.

The State takes the position that Ms. Broadway is not "a party in a civil or criminal case by a circuit court" and therefore section 12–301 does not apply. We reject this argument.

The case of *St. Joseph's v. Cardiac Surgery*, 392 Md. 75, 896 A.2d 304 (2006), is instructive. The *St. Joseph*'s case arose out of a civil lawsuit filed by Cardiac Surgery Associates, PA ("Cardiac Surgery") against Mid Atlantic Cardiovascular Associates PA. Cardiac Surgery alleged in this complaint that the defendant had, among other things, engaged in unfair competition in connection with the defendant's cardiac surgery practices. *Id.* at 80, 896 A.2d 304. Both sides sought discovery against St. Joseph's Medical Center, Inc. (St. Joseph), a nonparty. *Id.* When a subpoena *duces tecum* was served on St. Joseph in that case, St. Joseph produced over twenty thousand pages of documents. But it also produced a privilege log, that identified certain documents that it refused to produce, because, according to St. Joseph, the documents were privileged. *Id.*

St. Joseph later learned that 118 documents that were listed in the privilege log had been exchanged by the parties during discovery. St. Joseph wrote to each of the parties and advised them that the "118 documents in their possession were privileged, that the documents had improperly come into the custody of the parties and St. Joseph demanded the immediate return of the documents" to it. *Id.* at 81, 896 A.2d 304. When the documents were not returned, St. Joseph filed, in the tort suit, a motion for protective order asserting that the medical review committee privilege protected the 118 documents. *Id.* St. Joseph requested the court "to disallow the use of these documents at the trial of the unfair competition case and order the parties in that case to return them to the hospital." *Id.* Cardiac Surgery responded to St. Joseph's motion by arguing

that the medical review committee privilege did not apply to any of the documents listed in St. Joseph's privilege log, including the 118 documents that had been provided in the underlying suit. The circuit court granted St. Joseph's motion for a protective order, in part, and denied it in part. *Id.* St. Joseph noted an appeal to this Court with regard to 14 of the documents in Cardiac Surgery's possession and with regard to the other documents listed in the privilege log that the circuit court held were discoverable. *Id.* Before this Court heard argument, the Court of Appeals issued a *writ of certiorari.*

In the *St. Joseph's* case, the Court of Appeals said, in relevant part:

> Our conclusion that the Circuit Court's discovery order is not appealable under the collateral order doctrine, however, does not end the question of appealability.

> Although the discovery order was interlocutory with regard to the underlying unfair competition litigation and the parties to that case, *the order was not interlocutory with regard to St. Joseph. St. Joseph is not a party to the unfair competition case and would have no standing to challenge the discovery order by appealing from a final judgment in that case. See Lopez–Sanchez v. State,* 388 Md. 214, 224 [879 A.2d 695] (2005) ("A salient feature of [the general appeals] statute[ ] is that the grant of appellate rights extends only to parties"). The only proceeding in which St. Joseph is a party is the "motion for a protective order" proceeding pursuant to Maryland Rule 2–403(a)4. The Circuit Court's order finally terminated that proceeding adversely to St. Joseph. *Analytically, and under our cases, the order was final as to St. Joseph and was appealable by St. Joseph as a final judgment.* Under the circumstances here, and unlike the law in some other jurisdictions, Maryland law does not require a person or entity in St. Joseph's position to refuse compliance with the court's order, and be held in contempt, in order to challenge on appeal the adverse order.

*　　*　　*

In situations where the aggrieved appellant, challenging a trial court discovery or similar order, is not a party to the underlying litigation in the trial court, or where there is no underlying action in the trial court but may be an underlying administrative or investigatory proceeding, Maryland law permits the aggrieved appellant to appeal the order because, analytically, it is a final judgment with respect to that appellant. *See, e.g., State Prosecutor v. Judicial Watch,* 356 Md. 118, 126 [737 A.2d 592] (1999) (This Court pointed out that the order in the *[Dept. of Social Services v.] Stein* case [328 Md. 1, 612 A.2d 880 (1992) ] was *appealable because the appellant "was a non-party to the underlying action, as to whom the discovery disclosure order had all the attributes of finality recognized by this Court")* .... *Id.* 89–91, 896 A.2d 304 (emphasis added).

By parity of reasoning, if the discovery order in the *St. Joseph's* case was final as to St. Joseph, a non-party in the underlying suit, then the April 6, 2011 order that subjected appellant to pretrial supervision was likewise appealable. Similar to the situation in the *St. Joseph's* case, the order as to Ms. Broadway was final because she would have no standing to file an appeal after the judgments in the underlying criminal cases become final. Moreover, by the time the criminal judgments become final, she would no longer be under court supervision because such supervision will end when the criminal cases are concluded. Also, the April 6, 2011 order "has all the attributes of finality recognized by ... [the Court of Appeals]" because it settles the rights of Ms. Broadway and the State in the matter at issue. *See Department of Social Services v. Stein,* 328 Md. 1, 13, 612 A.2d 880 (1992).

For the above reasons, we hold that the April 6, 2011 order was appealable by Ms. Broadway.

## IV.

### Right To An Attorney

■ Ms. Broadway argues that she had a right to counsel at the March 17, 2011 detention hearing under the Fourteenth

Amendment to the United States Constitution,. the Maryland Declaration of Rights and the Maryland Public Defender Act,[5] which is codified in Md.Code (2008 Supp), section 16–204(b)(1)(iv) of the Criminal Procedure Article.

The State contends that the issue as to whether appellant was entitled to counsel at the March 17, 2011 hearing is not preserved for appellate review because it was neither raised nor decided in the circuit court. *See* Md. Rule 8–131(a). It also argues that the issue is moot. To decide the validity of the State's arguments, it is necessary to recount some additional facts as to what transpired at the April 6, 2011 hearing.

At the April 6, 2011 hearing, defense counsel set forth, in detail, the reasons he believed the court's order for a body attachment should be vacated. Ms. Broadway's attorney made no claim at that point that his client should have been appointed an attorney to represent her at the earlier hearing. The court then asked defense counsel "what about [Ms. Broadway's] contemptuous behavior before the court [on March 17th]." The following exchange then occurred:

[Defense Counsel]: Well your Honor, and that's why I . . . [addressed] the circumstances that led up to it.

THE COURT: Counsel, there are people here that come into this courtroom who have been incarcerated for thirty or forty years and they don't show the contempt and disrespect for the court as she did.

[Defense Counsel]: Well your Honor, if she was—

THE COURT: Take your hands off your hips please, I find that to be a bit aggressive.

[Defense Counsel]: Your Honor, if she was—your Honor, certainly my apologies if the if the court believes I'm engaging in any aggressive behavior to the court, I'm not. I'm simply addressing the facts and circumstances that

---

**5.** The Maryland Public Defender Act provides, in pertinent part, that [i]ndigent defendants or parties shall be provided representation under [the Act] in: " . . . other proceeding in which confinement under a judicial commitment of an individual in a public or private institution may result." Criminal Procedure Article, section 16–204(b)(1)(iv).

brought Ms. Broadway here and how from Ms. Broadway's perspective it was a terrible abuse of process.

THE COURT: Okay.

[Defense Counsel]: And, moreover, if you—

THE COURT; What does that have to do with her contemptuous behavior in this courtroom?

[Defense Counsel]: Well your Honor, if your Honor held her in contempt then I think there's a different set of proceedings that needed to be followed, which weren't. *She was unrepresented by counsel and yet if the court made a finding that she was in contempt, there are procedures that needed to be followed.* She needed to have counsel. And if the reason for holding her was some finding of contempt, then that needs to be vacated in and of itself.

THE COURT: Why?

[Defense Counsel]: Because the procedures weren't followed. *If she was being held in criminal contempt then she needed to have counsel. She was unrepresented at that hearing.*

THE COURT: And who is supposed to supply her with counsel?

[Defense Counsel]: Well the court can certainly ensure [that] she has counsel.

THE COURT: How's that?

[Defense Counsel]: Well, your Honor—

THE COURT: Just pull some lawyer off the street and say hey represent this woman. You know the one, the one that's acting out in court, the one that's being totally disrespectful and very contemptuous.[6] Come on, represent her. Waive your fee Mr. Needleman, represent this woman in court.

[Defense Counsel]: Your Honor, I think the court—it's within the inherent authority and supervisory power of this

---

**6.** The characterization of Ms. Broadway's behavior as being either contemptuous or disrespectful is not supported by the record.

court to ensure that before someone is incarcerated, that they have counsel or that they at least be advised of their right to counsel—

THE COURT: Well where's that rule?

[Defense Counsel]: Which didn't occur.

THE COURT: Where's that rule? Where's that rule?

[Defense Counsel]: Your Honor, um I—

THE COURT: Where is that rule?

[Defense Counsel]: Well—

THE COURT: Find that rule for me and—find the rule.

(Emphasis added.)

As can be seen, up to that point in the colloquy just quoted, defense counsel and the circuit court were discussing Ms. Broadway's right to counsel if (hypothetically) the court believed that Ms. Broadway was in criminal contempt of court. But in further response to additional questions asked of defense counsel regarding what rule he relied upon, defense counsel segued to a discussion of Rule 4–267, dealing with body attachments. He pointed out that Rule 4–267(a) required that Ms. Broadway should have been taken before a District Court Commissioner as soon as possible after she was taken into custody after the order for a body attachment was served. He then argued that the District Court Commissioner was required, pursuant to Rule 4–213, to advise Ms. Broadway of her right to counsel. In this regard defense counsel was wrong because Rule 4–213 applies only to "defendants" in criminal cases. Ms. Broadway was not a defendant, because that term is defined as "a person who has been arrested for an offense or charged with an offense in a charging document." *See* Md. Rule 4–102(c). An "offense" is defined as "a violation of the criminal laws of the State or political subdivision thereof." Md. Rule 4–102(g). Ms. Broadway was never arrested or charged with a violation of the criminal laws in this case.

Thereafter, defense counsel said that he believed that the court *had the power* to appoint an attorney to represent Ms.

Broadway at the March 17, 2011 hearing pursuant to "the inherent supervisory authority of the court." (Emphasis added). The trial judge then asked counsel whether the court had *an obligation* to appoint counsel. Defense counsel never answered that question. Instead, defense counsel said "I don't think that's an issue we need to resolve right now."

Maryland Rule 8–131(a) reads:

(a) **Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

Defense counsel never argued in the circuit court that Ms. Broadway had a right to counsel under the Public Defender Act or under the Maryland Declaration of Rights or under our federal Constitution. Nor did appellant argue below that the court was otherwise *obligated* to appoint counsel to represent her at the March 17th hearing. And, because the mandate we shall issue shall require the vacation of the body attachment, there is no chance of another appeal by Ms. Broadway regarding this matter. Under these circumstances we agree with the State that Rule 8–131(a) prevents us from deciding the right to counsel issue.

■■■■■■ We also agree with the State that the right to counsel issue (as opposed to the issue of whether the circuit court should have dismissed the body attachment) is moot. Even if we were to assume, *arguendo*, that Ms. Broadway had a right to counsel at the March 17th hearing that resulted in her being incarcerated, she has already been released from jail and therefore we can provide her with no effective remedy to ameliorate the damages she suffered as a result of being unrepresented on that date. What the Court of Appeals said

in *Mercy Hospital v. Jackson,* 306 Md. 556, 561, 510 A.2d 562 (1986), is here apposite:

> A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide. It is undisputed that the present case is moot under this standard. There is no longer a controversy between Mercy Hospital and Mrs. Jackson over consent to a blood transfusion. Nothing that we say will bind the parties to any future course of action or will affect or remedy what has already taken place. Citing *Attorney Gen. v. A.A. School Bus,* 286 Md. 324, 327, 407 A.2s [A.2d] 749 (1979).

*Id.* at 561, 510 A.2d 562.

▉▉▉ Ms. Broadway argues that even if the question presented is moot, this Court should nevertheless review this important issue because the issue of whether a defendant charged under Rule 4-267 is entitled to counsel "will recur but will usually evade review." It is true that the issue is important and will likely recur in other cases. And, had the issue been argued in the trial court, this might, at least arguably, be an appropriate case to decide a moot issue. But, when an issue is both moot and not raised in the trial court, it should not be considered on appeal. *See County Council v. Offen,* 334 Md. 499, 508-11, 639 A.2d 1070 (1994) (holding that this Court abused its discretion under Rule 8-131(a) by deciding an important issue of first impression not raised below).

**ORDER DIRECTING THAT APPELLANT BE UNDER PRE-TRIAL SUPERVISION VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH DIRECTIONS TO ENTER AN ORDER DISMISSING THE BODY ATTACHMENT ISSUED IN THIS CASE; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**